518 So.2d 649 (1988)
Valdjawan DEER
v.
STATE DEPARTMENT OF PUBLIC WELFARE.
No. 58128.
Supreme Court of Mississippi.
January 6, 1988.
Anne Winter Williams, Gillis, Gillis & Williams, McComb, for appellant.
Alice Powers, McComb, for appellee.
Before ROY NOBLE LEE, C.J., and ANDERSON and ZUCCARO, JJ.
*650 ZUCCARO, Justice, for the Court:
On May 6, 1985, the Mississippi State Department of Public Welfare filed suit against Valdjawan Deer (pursuant to Miss. Code Ann. § 43-19-31 (1972)) to determine paternity and for child support. From a ruling establishing paternity and an order to pay child support in the amount of $96.00 per month Valdjawan Deer appeals.
Clifford D. Stevenson was born on May 10, 1973 to Brenda Gatlin. Subsequent to Clifford's birth his mother began accepting financial assistance from the Mississippi State Department of Public Welfare, under the Aid to Dependent Children Program. Twelve (12) years after Clifford's birth the Department of Welfare brought suit against Valdjawan Deer, the alleged father, pursuant to Miss. Code Ann. § 43-19-31 (1972)[1] alleging that he was the father of Clifford D. Stevenson and that appellant was capable of providing for the child. The Welfare Department sought full and complete restitution of the amounts provided to the child, as well as a reasonable amount for the support and maintenance of the child and for court costs.
On July 17, 1985 the county court determined that appellant was the actual father of Clifford and ordered the appellant to pay $96.00 per month to the Pike County Welfare Department until the child reached the age of twenty-one (21) years old or married.
On July 29, 1985 the appellant moved for a new trial and cited the following grounds therefor:
A. He had not been represented by counsel since he was under the false impression that no witnesses would be produced by the plaintiff;
B. After production of witnesses for plaintiff no continuance was granted to allow appellant to procure legal counsel;
C. As a result of proceeding Pro Se the defendant failed to receive an order for a blood test;
D. The court received a partial and distorted view of the relevant facts of the case.
The motion for a new trial was denied on May 15, 1986.
Appellant assigns as error the following:
I. THE LOWER COURT ERRED IN REFUSING TO GRANT APPELLANT'S MOTION FOR A BLOOD TEST.
II. THE LOWER COURT ERRED IN OVERRULING THE APPELLANT'S MOTION FOR A NEW TRIAL.
Since the first assignment is dispositive, we do not reach the second. There is no challenge to the constitutionality of § 93-9-21 of the Mississippi Code of 1972.

DID THE LOWER COURT ERR IN REFUSING TO GRANT THE APPELLANT'S MOTION FOR A BLOOD TEST?
*651 Mississippi Code Annotated § 93-9-21 (Supp. 1986)[2] provides as follows:
§ 93-9-21. Blood tests  enforcement of order to submit.
The court, upon motion of the defendant, shall order the mother, the child, and alleged father to submit to blood tests. If any party refuses to submit to such tests, the court may resolve the question of paternity against such party or enforce its order if the rights of others and the interests of justice so require.
This statute is mandatory, not discretionary. If the defendant requests the blood tests, the trial court shall order them. Because the trial court did not order the tests, we conclude that the judgment must be reversed and the cause remanded for a new trial.
On remand, however, the applicable statute will be the amended § 93-9-21, which provides as follows:
Blood tests and other tests; enforcement of order to submit; notice of witnesses testifying as to sexual intercourse with mother.
(1) The court, on motion of the plaintiff, the defendant, or its own motion, may order the mother, the alleged father and the child to submit to blood tests and any other tests which reasonably prove or disprove the probability of paternity. (Emphasis added)
If any party refuses to submit to such tests, the court may resolve the question of paternity against such party or enforce its order if the rights of others and the interest of justice so require.
(2) Any party calling a witness or witnesses for the purpose of testifying that they had sexual intercourse with the mother at any possible time of conception shall provide all other parties with the name and address of the witness twenty (20) days before the trial. If a witness is produced at the hearing for the purpose stated in this subsection but the party calling the witness failed to provide the 20-day notice, the court may adjourn the proceeding for the purpose of taking a blood or other test of the witness prior to hearing the testimony of the witness if the court finds that the party calling the witness acted in good faith.
(3) The court shall ensure that all parties are aware of their right to request blood or other tests under this section.
Miss. Code Ann. § 93-9-21 (Supp. 1987). One effect of the amendment is that the ordering of the blood tests is now discretionary, rather than mandatory. We may reverse the trial court only where it has abused that discretion in ordering, or refusing to order, the blood tests.
According to the testimony at the hearing, while Brenda Gatlin was dating Valdjawan Deer she went to Jackson for a week and had sexual relations with another young man. When she returned she had sexual relations with Deer. Gatlin subsequently discovered that she was pregnant.
When Gatlin informed Deer that she was pregnant he left town. After the baby was born, Deer called Gatlin who informed him that he should not bother to come home because he was not the father of the baby. Gatlin had already married Clifford Gatlin at that time. They moved to Texas and had three (3) more children.
When Gatlin moved back to Jackson, ten (10) years later, Deer became acquainted with Clifford. He bought him a few gifts and took him on a trip to New Orleans to visit his family.
In entering his ruling the trial judge stated:
BY THE COURT: I THINK THE EVIDENCE IS CONCLUSIVE: IT IS YOUR CHILD. CONGRATULATIONS.
A. I don't think it is, judge, I made the motion to the court that we do go to Jackson and have the blood test or whatever type test.
BY THE COURT: I GAVE YOU YOUR OPPORTUNITY. I ASKED IF YOU HAD ALL YOUR WITNESSES; THAT'S WHAT YOU WOULD HAVE HAD FOR YOU.
A. What?

*652 BY THE COURT: THE BLOOD TEST. YOU HAD THE OPPORTUNITY. YOU DECIDED NOT TO DO IT. I ASKED IF YOU HAD ANY WITNESSES, "NO, DON'T NEED ANY."
A. At the previous case of court before this, I asked you to let me think and to go on.
BY THE COURT: I TOLD YOU YOU COULD DO IT. THAT'S A DEFENSE  THAT'S NOT THE PROOF. THAT IS UP TO YOU TO DO, NOT FOR HER TO DO.
A. Yes.
BY THE COURT: I DON'T KNOW MANY MEN, MR. DEER, THAT WOULD TAKE CHILDREN, AND BRING THEM PRESENTS, TAKE THEM PLACES THAT ARE JUST MERE ACQUAINTANCES, OR THE CHILDREN OF YOUR BEST FRIEND WHO YOU HAD A GUN FOR. PEOPLE DON'T DO THAT.
A. Now, it's a little boy at my house right now that I picked up this morning.
BY THE COURT: IS IT YOURS?
A. No, sir, he's got blond hair and blue eyes.
BY THE COURT: ANY OTHER QUESTIONS? DO YOU WANT TO APPEAL?
A. What?
BY THE COURT: DO YOU WANT TO APPEAL?
A. Yes, sir.
BY THE COURT: ALL RIGHT. POST YOUR APPEAL BOND: GET A TRANSCRIPT MADE: APPEAL TO JUDGE JOE PIGOTT.
A. I don't know if I want to do that.
BY MR. CARNEY: If the court please, do you want to set an amount for the child support?
BY THE COURT: HOW MUCH ARE YOU MAKING, VAL?
A. I make anywhere from $150 to $225 a week, it varies. Some months I might make $400.
BY THE COURT: HOW MUCH DOES SHE RECEIVE?
BY MR. CARNEY: She will receive for this child $96.
BY THE COURT: WELL THAT WILL BE YOUR PAYMENT.
(R. at 30-31)
Brenda Gatlin had sexual relations with another young man during the time period in which she was romantically involved with Deer.
Brenda Gatlin married another man with his knowledge that she was pregnant. The presumption that a child born in wedlock is the legitimate child of the husband is one of the strongest presumptions known to law and may be overcome only by proof beyond a reasonable doubt that the husband is not the father. Baker v. Williams, 503 So.2d 249, 253 (Miss. 1987); Brabham v. Brabham, 483 So.2d 341, 343 (Miss. 1986).
Brenda Gatlin testified that she told Deer he was not the father of the child and that he should not return home when he contacted her.
The chancellor alluded to the fact that Gatlin had stated the previous day in court that she didn't know who the father of the baby was.
Q. I HAVE GOT A QUESTION. WHY DID YOU SAY YOU DIDN'T KNOW WHO THE DADDY WAS THE OTHER DAY IN COURT?
A. I will explain that. I hadn't thought about it in a long time until he brought it to my attention.
BY THE COURT: WHO DID?
A. Val did. He came to me and he said, "You know we are going to court for the child." I said, "Okay, if that's what we've got to do, we've got to do it." He said, "You know, I am gonna give you a good fight in court. Don't you remember that time you told me you had sex with that other guy? I am gonna bring that out and let them know this is not my baby." I thought I would bring it out and let you know because he told me he was gonna bring it out.
Based upon the foregoing facts it is apparent to this Court that there is substantial doubt as to whether Deer is the father of Clifford. Thus, the blood test was timely requested by defendant and the only *653 method to prove the true natural fatherhood of Clifford Gatlin.
It is the opinion of this Court that the trial court should have ordered blood tests on motion of defendant because there was substantial doubt as to the fatherhood of the child but more so because defendant requested the blood test. This Court is aware of the decision in Daniels v. Ladner, 514 So.2d 327 (Miss. 1987), however, recognizes the statute has been amended, effective July 1, 1987, to provide standing to any party to a paternity suit requesting blood tests. This decision is not inconsistent with our decision in Ladner. In Ladner the plaintiff requested the blood test whereas in the instant case the defendant requested it. Miss. Code Ann. § 93-9-21 (Supp. 1986) mandated the order of a blood test requested by the defendant. Failure to do so constituted an abuse of discretion.
Because the trial court erred in failing to order the blood tests, the judgment is reversed and the cause remanded for a new trial consistent with this opinion.
REVERSED AND REMANDED FOR A NEW TRIAL.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.
NOTES
[1] § 43-19-31. Child support unit authorized; purposes.

The state department of public welfare is hereby authorized and empowered to establish a single and separate child support unit for the following purposes:
(a) To develop and implement a nonsupport and paternity program and institute proceedings in the name of the state department of public welfare or in the name of the recipient in any court of competent jurisdiction in any county where the mother of the child resides or is found, in the county where the father resides or is found, or in the county where the child resides or is found;
(b) To secure support and establish paternity for any child or children receiving aid from the department, from a parent or any other person legally liable for such support who has either failed or refused to provide support, deserted, neglected or abandoned the child or children, including initiating support and paternity actions under the Uniform Reciprocal Enforcement of Support Law and cooperating with other states in establishing paternity, locating absent parents and securing compliance with court orders for support of aid to dependent children;
(c) To initiate support or paternity actions in behalf of nonrelated aid to dependent children families upon payment of a fee to be prescribed by the state department of public welfare and the subsequent payment of all costs assessed by the court; and
(d) To initiate contempt of court proceedings or any other remedial proceedings necessary to enforce any order or decree of court relating to child support.
[2] This section has been amended. See Mississippi Code Annotated § 93-9-21 (Supp. 1987).