644 So.2d 1218 (1994)
Richard IVY
v.
Phillip HARRINGTON.
No. 93-CA-00251.
Supreme Court of Mississippi.
October 27, 1994.
*1219 Sanford E. Knott, Jackson, for appellant.
Joe M. Buchanan, Indianola, for appellee.
Before PRATHER, P.J., and SULLIVAN and ROBERTS, JJ.
SULLIVAN, Justice, for the Court:
This appeal arises from a February 5, 1993, decree of the Chancery Court of Sunflower County, Mississippi. In that decree, the chancellor denied the motion of a putative father, Richard Ivy, which requested that the court order blood tests to be administered to aid in determining paternity, and dismissed Richard Ivy's complaint in which he sought to establish his paternity of two children born to Pearlie Jernigan Harrington during her marriage to Phillip Harrington.
We reverse and remand, holding that the chancellor erred: 1) in denying the motion for blood tests; 2) in finding that Richard Ivy lacked standing to bring an action to establish paternity of children born during a marriage in which he was not a spouse; and 3) in finding Pearlie Jernigan Harrington was judicially estopped from testifying in the paternity action because her testimony was contrary to her sworn statements in her prior divorce action against Phillip Harrington.

I.
Phillip Harrington ("Phillip") and Pearlie Jernigan Harrington ("Pearl") were married on December 13, 1978. During their marriage, four children were born. When Pearl and Phillip divorced on April 30, 1987, Phillip was granted custody of all four of the children.
Over five years after Pearl and Phillip divorced, on October 30, 1992, Richard Ivy ("Richard") filed a COMPLAINT TO ESTABLISH PATERNITY, naming Phillip as the defendant. There, Richard alleged that *1220 he and Pearl had engaged in an adulterous relationship during part of the time Pearl was married to Phillip, and as a result of that relationship, two children, whose natural father is Richard, were born to Pearl while she was still married to Phillip. We refer to those two children as Alpha and Omega.[1] Alpha and Omega are two of the four children whose custody was granted to Phillip at the time of his 1987 divorce from Pearl.
In his complaint, Richard claimed that he, not Phillip, was the natural father of Alpha and Omega. A sworn affidavit, dated October 19, 1992, and signed by Pearl, was attached to Richard's complaint. In that affidavit, Pearl stated, under oath, that the facts alleged in Richard's COMPLAINT TO ESTABLISH PATERNITY were true. Richard's complaint sought an order of filiation or a final decree that would adjudicate: his paternity of Alpha and Omega; that Alpha and Omega be afforded rights of inheritance from Richard; and that Richard be awarded the rights of a natural father, including custody or visitation rights with the children.
Phillip answered Richard's complaint, denying the substance of the allegations. Richard followed, filing his MOTION TO REQUEST BLOOD TEST. In that motion, Richard requested that all necessary parties be ordered to submit to a blood test. He also agreed to bear the initial costs of those tests.
Thereafter, on December 8, 1992, the chancellor held a hearing on Richard's motion for blood tests. At the beginning of the motion hearing, Phillip's attorney moved for the complaint to be dismissed. The chancellor did not immediately rule on that motion, reserving his ruling until the end of the hearing.
During the hearing, Pearl testified that during her marriage to Phillip they were living together "off and on" at the time that Alpha was born and at the time that Omega was born. Both Richard and Pearl stated that, while Pearl was legally married to Phillip, they had a sexual relationship with each other. Even Phillip testified that he "assumed" that Pearl and Richard were having a relationship prior to the time the couple divorced. Pearl affirmatively testified that Richard, whom she was living with at the time of the hearing, not Phillip, was the father of Alpha and Omega.
The chancellor subsequently rendered his RULING OF THE COURT and his DECREE, denying Richard's motion for court-ordered blood tests and dismissing Richard's complaint. In his ruling, the chancellor found, inter alia, as follows:
The Court finds that Pearlie Jernigan Harrington is judicially estopped to testify contrary to her sworn complaint for divorce in the Chancery Court of Sunflower County, Mississippi. A party who by his pleadings under oath has assumed a particular position in a legal proceeding is estopped to assume an inconsistent position in a subsequent action.
....
The Court finds that a third party, Mr. Ivy, has no standing to challenge the legitimacy of children born to a valid marriage where neither non-access of the husband nor physical inability is shown and in which the former wife is judicially estopped because her testimony is contrary to her sworn petition in the previous proceedings.
Aggrieved, Richard timely filed his NOTICE OF APPEAL to this Court. He states three issues for our consideration, quoted immediately below:
A. THE CHANCELLOR ERRED WHEN HE DENIED APPELLANT'S MOTION FOR BLOOD TEST.
B. JUDICIAL ESTOPPEL DOES NOT APPLY TO ONE TESTIFYING IN A PATERNITY ACTION (IN WHICH SHE WAS NOT A PARTY) CONTRARY TO HER SWORN STATEMENTS IN A PRIOR DIVORCE ACTION (IN WHICH SHE WAS A PARTY) CONCERNING *1221 THE PARENTAGE OF THE CHILDREN.
C. THE CHANCELLOR ERRED IN DISMISSING THE COMPLAINT TO ESTABLISH PATERNITY FOR LACK OF STANDING WHERE THE APPELLANT CHALLENGED THE LEGITIMACY OF A CHILD BORN TO A VALID MARRIAGE WHERE NEITHER NON-ACCESS NOR PHYSICAL INABILITY OF THE HUSBAND WAS SHOWN TO EXIST.

II.

A. THE CHANCELLOR ERRED WHEN HE DENIED APPELLANT'S MOTION FOR BLOOD TEST.
"The presumption that a child born in wedlock is the legitimate child of the husband is one of the strongest presumptions known to law... ." Deer v. State Dept. of Public Welfare, 518 So.2d 649, 652 (Miss. 1988) [citing Baker v. Williams, 503 So.2d 249, 253 (Miss. 1987); Brabham v. Brabham, 483 So.2d 341, 343 (Miss. 1986)]. However, it is a presumption subject to rebuttal, and it may be overcome if the party challenging legitimacy proves beyond a reasonable doubt that the presumed father, the husband, or former husband in the case sub judice, is not the biological father of the child or children at issue. Matter of Estate of Taylor, 609 So.2d 390, 394 (Miss. 1992).
Here, Richard sought to obtain evidence which could be used in rebutting the presumption that Phillip was the biological father of Alpha and Omega  blood tests. When used properly, the results of appropriate blood and tissue type tests, such as human leukocyte antigen tests, can produce a "high degree of discrimination either excluding or including a given male as the father of a particular child," and such tests are "available for rebutting such presumption if available and authenticated." Baker by Williams v. Williams, 503 So.2d 249, 253 (Miss. 1987). See also Matter of Estate of Taylor, 609 So.2d 390, 394 (Miss. 1992); Grimsley v. Tyner, 454 So.2d 482 (Miss. 1984).
But, the issue is whether the chancellor erred by refusing to grant Richard's motion for blood tests in the proceedings to establish paternity. That issue is controlled by Miss. Code Ann. § 93-9-21 (1972), as Amended.
Prior to 1987, Miss. Code Ann. § 93-9-21 (1972) did not afford a plaintiff such as Richard the right to move the trial court for an order requiring blood tests. Only the defendant was so entitled. But, § 93-9-21 was amended in 1987 and again in 1990. Those amendments extended the privilege to request blood tests to plaintiffs in paternity actions, and we have recognized the effect of that amendment in our prior cases. Deer v. State Dept. of Public Welfare, 518 So.2d 649, 653 (Miss. 1988); Johnson v. Ladner, 514 So.2d 327, 328 n. 1 (Miss. 1987).
Since Richard's paternity action was initiated well after the 1987 and 1990 amendments, the mandates of the amended version of Miss. Code Ann. § 93-9-21 (1972) are applicable. The statute states, inter alia, that:
(1) The court, on its own motion or on motion of the plaintiff or the defendant, shall order the mother, the alleged father and the child or children to submit to blood tests and any other tests which reasonably prove or disprove the probability of paternity.
Miss. Code Ann. § 93-9-21 (Supp. 1993) (Emphasis added).
The operative word of § 93-9-21 is "shall." A basic tenet of statutory construction constrains us to conclude that, unlike the discretionary nature of "may," the word "shall" is a mandatory directive. American Sand and Gravel Co. v. Tatum, 620 So.2d 557, 563 (Miss. 1993); Planters Trust & Bank Co. v. Sklar, 555 So.2d 1024, 1027 (Miss. 1990). As a consequence, in a proceeding to establish paternity, upon motion by either the plaintiff or defendant for an order requiring blood tests, the trial judge must grant the motion; no discretion is afforded the trial judge. Cf. Deer v. State Dept. of Public Welfare, 518 So.2d 649, 651 (Miss. 1988).
Accordingly, in this case since Richard, the plaintiff in a paternity action, made a motion for blood tests, the chancellor erred in refusing to order those blood tests.

*1222 III.

B. JUDICIAL ESTOPPEL DOES NOT APPLY TO ONE TESTIFYING IN A PATERNITY ACTION (IN WHICH SHE WAS NOT A PARTY) CONTRARY TO HER SWORN STATEMENTS IN A PRIOR DIVORCE ACTION (IN WHICH SHE WAS A PARTY) CONCERNING THE PARENTAGE OF THE CHILDREN.
In her previous divorce proceeding against Phillip in 1987, Pearl swore that Phillip was the father of all four of her children born during her marriage to Phillip, including Alpha and Omega. But, a sworn affidavit attached to Richard's complaint, executed by Pearl on October 19, 1992, claimed the contrary. It asserted that Richard's allegations of parentage concerning Alpha and Omega were true. Further, at the hearing, Pearl testified that she and Richard engaged in sexual relations while she was married to Phillip, and that Richard was the father of Alpha and Omega, both of whom were born during her marriage to Phillip.
When questioned about her contradictory sworn statements, Pearl attempted to explain the conflicting positions. She claimed that, at the time of her divorce, she was told that she would stand a better chance of getting custody of all four children if she did not reveal the fact that Richard was the father of two of the children. Pearl admitted her earlier misrepresentations concerning the parentage of Alpha and Omega, contending that she made them in an attempt to gain custody of all four of the children.
The chancellor found that Pearl was judicially estopped from testifying contrary to her sworn statements made in her 1987 divorce proceeding, with regard to the biological father of Alpha and Omega. In support of its finding, the chancellor stated that, "[a] party who by his pleadings under oath has assumed a particular position in a legal proceeding is estopped to assume an inconsistent position in a subsequent action." The chancellor's statement of the law was essentially correct; however, he misapplied the law to the facts of the case.
With regard to the doctrine of judicial estoppel, we have previously stated that:
Judicial estoppel arises from the taking of a position by a party to a suit that is inconsistent with the position previously asserted in prior litigation. Banes v. Thompson, 352 So.2d 812 (Miss. 1977); Wright v. Jackson Municipal Airport Authority, 300 So.2d 805 (Miss. 1974); Sullivan v. McCallum, 231 So.2d 801 (Miss. 1970). (Emphasis added).
Daughtrey v. Daughtrey, 474 So.2d 598, 602 (Miss. 1985). See also Merchants Nat. Bank v. Stewart, 608 So.2d 1120 (Miss. 1992); Thomas v. Bailey, 375 So.2d 1049 (Miss. 1979).
Although Pearl was a party to the 1987 proceeding in which she sought a divorce from Phillip, she was not a party to the paternity suit brought by Richard, as plaintiff, naming Phillip as defendant. The fact that Pearl was not a party to the litigation is evident, not only by the style of the pleadings, but also by the chancellor's own words. Throughout the language of the chancellor's RULING OF THE COURT and his DECREE, the chancellor refers to the parties, naming Richard as the sole plaintiff, and Phillip as the singular defendant.
Consequently, since Pearl was not a party to the paternity litigation between Richard and Phillip, judicial estoppel has no application to Pearl's testimony. A fortiori, the chancellor erred in finding that Pearl's contradictory testimony was barred by the principle of judicial estoppel. However, we do not address the credibility or impeachability of Pearl's testimony herein, only its admissibility.

IV.

C. THE CHANCELLOR ERRED IN DISMISSING THE COMPLAINT TO ESTABLISH PATERNITY FOR LACK OF STANDING WHERE THE APPELLANT CHALLENGED THE LEGITIMACY OF A CHILD BORN TO A VALID MARRIAGE WHERE NEITHER NON-ACCESS NOR PHYSICAL INABILITY OF THE HUSBAND WAS SHOWN TO EXIST.
The chancellor found that Richard did not have standing to bring a suit to establish paternity of Alpha and Omega. The chancellor *1223 apparently grounded his finding simply on the fact that Pearl was married to Phillip, not Richard, at the time of the birth of Alpha and Omega; therefore, since Richard was the putative father, not the presumed father, he did not have standing to initiate an action for paternity.
That notion has been previously addressed by this Court. An alleged natural father, or putative father, does have "standing" to bring an action to establish paternity. Karenina By Vronsky v. Presley, 526 So.2d 518, 522 (Miss. 1988) [citing Baker By Williams v. Williams, 503 So.2d 249, 252 (Miss. 1987)]. Therefore, the chancellor erred in finding that Richard, a putative father, did not have standing to initiate a paternity action.

V.
The chancellor erred in denying the motion for blood tests made by the plaintiff, Richard. According to Miss. Code Ann. § 93-9-21 (1972), as Amended, the trial court must order blood tests if requested by any party to a paternity action.
The doctrine of judicial estoppel was incorrectly applied to Pearl's testimony by the chancellor. While Pearl testified contrary to the position which she took when she was a party to a prior judicial proceeding, at the hearing below in this case, Pearl was not a party, only a witness.
We have previously held that a putative father has standing to bring a suit to establish paternity. Consequently, the chancellor also erred in finding that Richard, a putative father, did not have standing to maintain the paternity action in this case.
Accordingly, we reverse and remand the case to the lower court for proceedings not inconsistent with this Opinion.
REVERSED AND REMANDED.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and PITTMAN, BANKS, McRAE, JAMES L. ROBERTS, Jr. and SMITH, JJ., concur.
NOTES
[1] The actual names of the two minor children are not used by this Opinion for reasons of confidentiality. Instead, the names Alpha and Omega are substituted for reference purposes, and they have no significance to the facts of the case.