735 So.2d 990 (1999)
W.H.W., Jr.
v.
J.J., J.B.J. and M.B.J., By and Through J. Kirkham Povall, their Guardian Ad Litem.
No. 97-IA-00824-SCT.
Supreme Court of Mississippi.
March 18, 1999.
William P. Myers, Hernando, Debbie H. Bell, University, Attorneys for Appellant.
Andrew M.W. Westerfield, J. Kirkham Povall, Cleveland, Attorneys for Appellees.
BEFORE PRATHER, C.J., SMITH AND WALLER, JJ.
PRATHER, Chief Justice, for the Court:

STATEMENT OF THE FACTS AND CASE
¶ 1. EJW and JJ were married in 1975. WHW began an adulterous affair with *991 EJW while she was married to JJ, and, in November, 1986, EJW gave birth to twins named JJJ and MBJ. EJW and JJ divorced on grounds of irreconcilable differences in 1990; EJW did not disclose her affair with WHW until after the divorce. The divorce decree found the twins to be issues of the marriage, and JJ and EJW were awarded joint custody of the children.
¶ 2. In 1991, WHW and EJW married. The couple obtained, without JJ's consent, blood tests which showed to a high probability that WHW was the biological father of the twins. The couple thereafter filed a paternity action to declare that WHW was the father and to terminate any parental rights which JJ had with the children. The case was tried in December, 1991, resulting in a finding that WHW was the father of the twins. On appeal, however, the Mississippi Court of Appeals reversed and remanded with additional instructions, including that EJW appear in her individual capacity, that a guardian ad litem be appointed to investigate on behalf of the children, and that a new hearing be held before the Chancellor or jury. Before the date of a second paternity trial, WHW moved for additional blood testing, which was duly ordered by the Court. JJ refused to submit to the testing, however, and the Chancellor declined either to enforce his order requiring that JJ be tested or, alternatively, to enter a default judgment in favor of WHW.
¶ 3. During a January 22, 1997 hearing, Diane Arnold, a licensed professional counselor, testified that the twins were in the primary custody of EJW and WHW and that, while they carried the legal surname "J", the twins themselves used the surname "W" in their dealings with friends. Arnold further testified that the twins were aware of the circumstances surrounding the paternity controversy but that the twins were very well-adjusted and "seem to have adapted to the situation that they are placed in by the adults in their lives." Arnold testified that both JJ and the Ws, who shared custody of the twins, provided a "loving, caring" environment for the children. Arnold testified that she accordingly felt it in the best interests of the twins to maintain a relationship with both the W and J families.
¶ 4. On cross-examination, Arnold conceded that JJJ in particular had a "hard time dealing with the name J" and that she preferred the surname W. When asked about the twins' preference as to their custody and visitation, Arnold responded:
A: JJJ said that if she didn't have to come to Cleveland every two weeks that she would not come. She would choose not to come. MBJ said that he did not know whether he would or not. I think what they both said was that it was because of just the fact that they had things that they were doing at home, you know activities that they were participating in, that sometimes it was not convenient. It had nothing to do with whether or not they loved JJ or not.
Q: These are children that you diagnosed as being intelligent, flexible, adaptive, and not disturbed and no emotional deficit. Correct?
A: That's right.
Following this hearing, the Chancellor declined either to enter a default judgment against JJ on the issue of paternity or to enforce his order for blood testing. Feeling aggrieved, WHW sought and was granted an interlocutory appeal to this Court.

LEGAL ANALYSIS

Because J.J. and the children have refused to submit to court ordered blood tests, the court should enter judgment against them and for W.H.W in this action.
¶ 5. Although the facts of the present case involve a number of difficult ethical issues, the present appeal centers around a more narrow issue of statutory interpretation. At issue in the present case is whether a trial court has the discretion *992 under Miss.Code Ann. § 93-9-21 (Supp.1998) to decline to enforce a previously issued order for blood testing to establish paternity. § 93-9-21(2) provides that a trial court "shall" issue such an order for blood testing, with no discretion granted to the trial court as to the issuance of such an order:
(2) The court, on its own motion or on motion of the plaintiff or the defendant, shall order the mother, the alleged father and the child or children to submit to blood tests and any other tests which reasonably prove or disprove the probability of paternity.
If any party refuses to submit to such tests, the court may resolve the question of paternity against such party or enforce its order if the rights of others and the interest of justice so require.
JJ notes, however, that § 93-9-21 provides that "(i)f any party refuses to submit to such tests, the court may resolve the question of paternity against such party or enforce its order if the rights of others and the interest of justice so require." JJ argues that, by setting forth the "may" language in § 93-9-21, the Legislature intended to leave the enforcement of the blood testing order within the discretion of the trial court. This Court finds this argument unpersuasive.
¶ 6. We conclude that the better view is that the "may" language in the second sentence of § 93-9-21 indicates that the trial court has two available options from which to choose. Specifically, § 93-9-21(2) gives a chancellor the option of either issuing a default judgment against the refusing party or, alternatively, enforcing the order for blood tests "if the rights of others and the interests of justice so require." In interpreting § 93-9-21, it is reasonable to conclude that the Legislature did not contemplate that court orders would be issued frivolously and with no expectation of compliance. A court order is, as suggested by its name, a mandatory directive for parties to comply with the dictates of the court and the Legislature, and an order would be ultimately meaningless without provisions for its enforcement.
¶ 7. Our conclusion in this regard is strengthened by a previous decision directly on point. In Ivy v. Harrington, 644 So.2d 1218 (Miss.1994), this Court interpreted § 93-9-21 and concluded that:
The operative word of § 93-9-21 is "shall." A basic tenet of statutory construction constrains us to conclude that, unlike the discretionary nature of "may," the word "shall" is a mandatory directive.... As a consequence, in a proceeding to establish paternity, upon motion by either the plaintiff or defendant for an order requiring blood tests, the trial court must grant the motion; no discretion is afforded the trial judge.
Ivy, 644 So.2d at 1221. This Court held unequivocally in Ivy that a chancellor has no discretion to decline to order blood tests to establish paternity, and this holding is binding authority in the present case. Absent the enforcement of an order for blood tests, the putative father is denied the opportunity to rebut the presumption of legitimacy, in contravention of Ivy. We conclude that a chancellor has no discretion to, in effect, bar the courthouse doors to a putative father and thereby deny him the opportunity to overcome the very strong, but rebuttable, presumption of legitimacy[1].
¶ 8. This appeal is concerned solely with the issue of whether WHW has the legal right to attempt to overcome the rebuttable presumption that the twins are the children of JJ. We conclude that WHW does in fact have such a right. The ruling of the trial court is accordingly reversed, and this case is remanded for proceedings consistent with this Court's opinion.
¶ 9. REVERSED AND REMANDED.
*993 SULLIVAN AND PITTMAN, P.JJ., BANKS, SMITH, MILLS AND WALLER, JJ., CONCUR.
McRAE, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.
NOTES
[1] This Court recently noted in Matter of Estate of Chambers, 711 So.2d 878, 881 (Miss.1998) that "[d]etermining a child's parentage is a compelling state interest, and thus, according to the statute (§ 93-9-21), a court can order a party witness to submit to a blood test."