928 So.2d 852 (2006)
William Russell THOMS
v.
Hank THOMS.
No. 2004-IA-02429-SCT.
Supreme Court of Mississippi.
May 11, 2006.
*853 Marty Craig Robertson, attorney for appellant.
H.J. Davidson, Jr., Columbus, attorney for appellee.
Before COBB, P.J., CARLSON and GRAVES, JJ.
COBB, Presiding Justice, for the Court.
¶ 1. This case is before this Court on interlocutory appeal filed by William Russell Thoms (Rusty) from an Order for Genetic Testing entered by the Oktibbeha County Chancery Court. Hank Thoms (Hank), cousin to Rusty, had filed a Petition for Determination of Paternity and for Other Relief seeking to know whether he was the father of a child whom Rusty had been raising as his own since birth. The chancery court ordered Hank, the child, and Wendy Thoms, the natural mother, to submit to genetic testing, and further ordered that if the test indicated Hank as the probable father, Rusty must also be tested. Aggrieved, Rusty filed his interlocutory appeal, which this Court granted together with a stay of the testing.

FACTS AND PROCEDURAL HISTORY
¶ 2. Three suits were filed soon after Rusty learned his wife was having an affair with his cousin, Hank Thoms, and that one of the children he had been raising as his own, might be Hank's son. The first, an alienation of affection suit filed by Rusty against Hank in Rankin County Circuit Court, and the second, a divorce action filed by Rusty against Wendy in the Oktibbeha County Chancery Court, were still pending at the time of the present interlocutory appeal arising from the third suit. Rusty argues generally that genetic testing would result in irreparable injury to one or both of the children[1] involved. *854 Specifically, he raises four issues, asserting that the trial court erred by: (1) entering the order for genetic testing without first making a determination of the best interests of the child; (2) failing to appoint a guardian ad litem before paternity testing; (3) failing to apply the doctrines of clean hands, laches, and equitable estoppel to bar Hank's request for genetic testing; and (4) requiring Rusty to submit to DNA testing if test results indicate a probability of paternity that Hank is the child's father. Hank asks only that his right to a paternity test be determined by this Court, and that the paternity action proceed in the trial court after the test results are known. We affirm the trial court and remand for further proceedings consistent with this opinion.

ANALYSIS

I. Whether the trial court erred when it entered the Order For Genetic Testing before applying the best interest of the child standard.
¶ 3. A Chancellor's findings are not to be disturbed unless the chancellor is manifestly wrong, clearly erroneous, or an erroneous legal standard was applied. Ferrara v. Walters, 919 So.2d 876, 881 (Miss.2005). The standard of review with respect to the chancellor's decision to order a paternity test is manifest error. Sanderson v. Sanderson, 824 So.2d 623, 626 (Miss.2002).
¶ 4. Rusty first argues that the trial court erred in ordering genetic testing because the court did not first engage in factfinding to determine whether a paternity test would be in the child's best interest, invoking the foundational "best interest of the child" rule present throughout Mississippi jurisprudence in cases involving children. He cites Dept. Of Human Services v. Jones, 627 So.2d 810, 811 (Miss.1993) for this well established rule, but presents no authority which supports his argument that the best interest determination must be made first, before the genetic testing is done. Rusty relies entirely on Griffith v. Pell, 881 So.2d 184 (Miss.2004) and the cases cited therein for his assertion that the "best interest" standard be applied before the testing, but his reliance is misplaced, as discussed infra.
¶ 5. Hank responds by pointing out that Miss.Code Ann. Section 93-9-21(2) (Rev.1999), provides in its entirety, that "[t]he court, on its own motion or on motion of the plaintiff or defendant, shall order the mother, the alleged father and the child or children to submit to genetic tests and any other tests which reasonably prove or disprove the probability of paternity." (Emphasis added.) In Ivy v. Harrington, 644 So.2d 1218, 1221 (Miss.1994), this Court noted that Section 93-9-21 was amended in 1987 to allow a putative father, plaintiff in a paternity action, to move for an order requiring blood tests. The Ivy Court went on to say that the word "shall" is a mandatory directive, and thus no discretion is afforded the trial judge, and the motion for paternity must be granted. Id. at 1221.
¶ 6. Hank also asserts the importance of genetic testing to determine such issues as inheritance rights and assessment of medical predispositions. Finally, Hank correctly argues that the best interest of the child should be considered only after the results of the genetic test. He cites the Griffith decision, also relied upon by Rusty, that holds that the best interest of a child, which is at the heart of a paternity action, would be best addressed in the divorce proceeding, not in the paternity action. 881 So.2d at 186.
¶ 7. Statutory construction of the plain language of Miss.Code Ann. Section 93-9-21(2), cited by the trial court as authority *855 for its ruling, constrains us to conclude that the word "shall" is a mandatory directive. As a consequence, in a proceeding to establish paternity, upon motion by either the plaintiff or defendant for an order requiring blood tests, the trial judge must grant the motion. Even if a trial court determined it was not in the child's best interests to require a paternity test, all that is necessary, under the statute as it currently exists, is for either the plaintiff or defendant in a suit regarding paternity to move for a test to be done. No discretion is afforded. Notwithstanding the breadth and depth and importance of the "best interest of the child" doctrine in Mississippi jurisprudence, the legislature was very clear in its unconditional amendment of 93-9-21. Unless and until that body sees fit to change it, we are bound by it. Notwithstanding good arguments to the contrary in this situation, the trial court and this Court must follow the mandate of the legislature.
¶ 8. Because we affirm the trial court on this first issue, on statutory grounds, we do not address issues two and three raised by Rusty, regarding clean hands, laches, equitable estoppel, and the appointment of a guardian ad litem. These issues, in a different context, and different arena, will be appropriate for consideration by the trial court after receiving the results of the genetic testing.

II. Whether requiring Rusty to submit to DNA testing is a violation of his Constitutional right against unreasonable search and seizure under the United States and Mississippi Constitutions.
¶ 9. The standard of review for Constitutional issues is de novo. Baker v. State, 802 So.2d 77, 80 (Miss.2001). Likewise, the standard of review for constitutionality of Mississippi statutes is also de novo. Austin v. Wells, 919 So.2d 961, 964 (Miss.2006).
¶ 10. The trial court held that, if the DNA tests of Wendy and the child indicate a probability of paternity for Hank, then Rusty must also submit to DNA testing. Rusty asserts in his brief that requiring him to submit to DNA testing is an unreasonable search and seizure under the United States and Mississippi Constitutions, but cites no law that supports this contention. Additionally, Rusty claims there are no provisions in our Uniform Law on Paternity, codified in Miss. Code Ann. Sections 93-9-1 through 93-9-49, which would allow for him to be compelled to submit to DNA testing under the circumstances in the present case.
¶ 11. The court order requiring Rusty to submit to testing is not absolute; instead, it is dependent on the outcome of Hank's results. The order states:
It is further ordered that if the results of the testing of the Plaintiff shall exclude his paternity no further testing shall be conducted. If the results of the testing of the Plaintiff shall indicate a probability of paternity for Plaintiff, it is further ordered that Reliagene shall draw a genetic sample from the Defendant William Russell Thoms and determine the probability of William Russell Thoms.
There is a distinct possibility that Rusty may never be required to undergo genetic testing. Thus this issue is premature and not ripe for appellate review, and we decline to address it today.
¶ 12. On remand, the testing of Hank, the mother and the child may be conducted. However, should the results indicate, as stated in the trial court order, "a probability of paternity for Hank", Rusty may develop the constitutionality issue before the trial court.

*856 CONCLUSION
¶ 13. This Court determines Rusty's arguments are without merit with regard to issues one, two, and three, and we affirm the portion of the Order for Genetic Testing as it applies to Hank, Wendy, and the child. We further determine that the constitutionality issue is premature and not ripe for appellate review. We remand to the trial court for further proceedings consistent with this opinion.
¶ 14. AFFIRMED AND REMANDED.
SMITH, C.J., WALLER, P.J., CARLSON, GRAVES AND DICKINSON, JJ., CONCUR. EASLEY, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. DIAZ AND RANDOLPH, JJ., NOT PARTICIPATING.
NOTES
[1] Rusty and Wendy have another child, who is not included in the underlying paternity action.