# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-CA-00291-COA

**MARION CHUCK EASTERLING A/K/A CHUCK EASTERLING**  **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**  **APPELLEE**

DATE OF JUDGMENT:          02/06/2018
TRIAL JUDGE:               HON. KATHY KING JACKSON
COURT FROM WHICH APPEALED: GREENE COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:    ELIZABETH L. PORTER
ATTORNEY FOR APPELLEE:     OFFICE OF THE ATTORNEY GENERAL
                           BY:  BILLY L. GORE

NATURE OF THE CASE:        CRIMINAL - POST-CONVICTION RELIEF
DISPOSITION:               AFFIRMED - 03/26/2019
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE CARLTON, P.J., TINDELL AND McDONALD, JJ.**

**McDONALD, J., FOR THE COURT:**

¶1.    On August 24, 2015, Marion Chuck Easterling knowingly and voluntarily entered a negotiated plea of guilty to aggravated assault of his sister, Kimberly Nicholson.  He was sentenced on November 16, 2015, to twenty years in the state penitentiary, with seven years to be served, along with a $1,000 fine, court costs, and $5,485.68 in restitution.  On August 2, 2017, Easterling filed a motion for post-conviction relief (PCR).  After an evidentiary hearing on September 28, 2017, the circuit court denied his motion; however, the Order to that effect was not filed until February 6, 2018.  On February 16, 2018, Easterling timely filed his appeal. Finding no error, we affirm the circuit court's decision.

## FACTS

¶2.     At the time of his plea, Marion Chuck Easterling was fifty-two years old. He has been totally deaf since birth and has only a ninth-grade education. He communicates by signing. He was married, had an adult child, and worked in construction. He had no prior criminal record.

¶3.     In May 2012, Easterling had an argument with his sister, Kimberly Nicholson, who is also deaf. Easterling said he got in his car and accidentally put it in drive instead of reverse and hit his sister pinning her to a wall. According to the State, however, Easterling's brother-in-law had to force Easterling out of the vehicle, so it could be backed up and Easterling's sister released. Kimberly's pelvis was crushed, and Easterling was charged with aggravated assault pursuant to Mississippi Code Annotated Section 97-3-7(2) (Rev. 2014).[1]

¶4.     Prior to entering his guilty plea on August 24, 2015, Easterling met privately with his attorney and a nationally certified interpreter, Margo Buisson. The interpreter assisted the communications between them and helped explain legal terms and the nature of the proceeding. During the proceeding, the interpreter was present at all times translating the questions into sign for Easterling and translating Easterling's signs for everyone else. Easterling, who can read and write, indicated that he had read the charges against him. The court thoroughly questioned Easterling as to his understanding of the charges to which Easterling replied, "I am guilty. I am sorry that it happened." The court went through each of the rights Easterling was relinquishing by pleading guilty, to which Easterling replied he

---

[1] An arson charge was later brought against Easterling who had burned his house down; that charge was not prosecuted because of his plea agreement.

knew these rights and was voluntarily giving them up. Easterling also said he was satisfied with the services of his attorney. The court accepted Easterling's plea as being knowingly and voluntarily made and set a date for sentencing.

¶5.    On November 16, 2015, the certified interpreter was again present at the sentencing hearing. The court sentenced Easterling to twenty years in the state penitentiary, with seven years to be served, along with a $1,000 fine, court costs, and $5,485.68 in restitution. At that hearing, Easterling asked several clarifying questions through his interpreter.

¶6.    Easterling retained new counsel, who on August 2, 2017 filed a "Motion to Vacate the Sentence, Set Aside the Conviction and/or Withdraw his Guilty Plea." Pursuant to Mississippi Code Annotated section 99-39-9 (3) (Rev. 2015), Easterling verified the motion. In the motion it was claimed that Easterling was not afforded a translator until the hearing on the guilty pleas and that due to his disability and limited education, Easterling did not understand the proceedings.[2] His attorney also claimed that Easterling's counsel at the time of the plea and sentencing was ineffective. The only attachment to the motion was Easterling's affidavit, in which he stated that he was currently of sound mind, that he had attended the Mississippi School for the Deaf but dropped out after the ninth grade, that he was not afforded an attorney at any stage of his case until he went to court, and that he did not understand the charges against him or the consequences of the guilty plea. No other

_____

    [2] The motion also states that he was suffering from his own trauma at the time of his arrest. Other than Easterling's verified motion, there was no proof of this or anything concerning Easterling's interactions with law enforcement prior to the guilty-plea hearing was entered. His own sworn affidavit mentions nothing of being denied a translator at these stages.

affidavits were attached or presented.

¶7.    The court held an evidentiary hearing on Easterling's motion on September 28, 2017. The State called the translator, Margo Buisson, who with national certification and over thirty-five years of experience, was accepted by the defense as an expert.  She testified:

> [H]ad there been any time at which I did not feel as though Mr. Easterling understood, I would have said–I would have stopped the situation immediately and said that the interpreter needs a moment to fully explain the situation, or I would have asked for clarification for the interpreter to be able to do the full interpretation and make sure that communication was happening.

Easterling called no witnesses and presented no other testimony or documents to support the allegations in his motion.  At the end of the hearing, the trial court stated that it had heard no testimony or evidence that would make it believe that Easterling did not fully understand what was going on during the prior proceedings.  The court denied the motion.  The Order to that effect was not filed until February 6, 2018.  On February 16, 2018, Easterling timely filed his appeal.

## STANDARD OF REVIEW

¶8.    A ruling court's decision to deny post-conviction relief will not be disturbed unless that court's factual findings are clearly erroneous.  However, the review for questions of law raised is de novo. *Jackson v. State*, 986 So. 2d 326, 327-28 (¶6) (Miss. Ct. App. 2007); *Hobson v. State*, 910 So. 2d 139, 1140 (¶4) (Miss. Ct. App. 2005).

## DISCUSSION

¶9.    On appeal, Easterling raises three issues: whether he was denied due process by the State's failure to provide an interpreter during his arrest, interrogation, and pre-trial matters;

whether, based on his hearing impairment and "mental deficiencies," Easterling lacked the capacity to enter a plea knowingly and voluntarily; and whether Easterling's counsel was ineffective.

> **I.** **Whether Easterling was denied due process by the State's failure to provide an interpreter during arrest, interrogation, and pre-trial matters.**

¶10. Easterling claims that pursuant to Mississippi Code Annotated Section 13-1-303, he was entitled to an interpreter from the time he became involved with law enforcement through sentencing. This Court acknowledges the requirements of the statute but sees no evidence in the record concerning the pre-court events (arrest, detention, or interrogation) or the denial of an interpreter at those times, other than allegations made in the motion that Easterling verified to meet statutory requirements. In his supporting affidavit, Easterling gives no facts to support this allegation. At the plea hearing, the state offered no interrogation statements or confessions by Easterling that would make this an issue. Moreover, in his affidavit accompanying the Motion, Easterling said he was not afforded the assistance of an *attorney*, not an interpreter, in the pre-trial stages of his case. At the hearing, Easterling offered no testimony or other proof of this claim.

¶11. Easterling cites as instructive the case of *Shook v. State*, 552 So. 2d 841 (Miss. 1989), where a deaf defendant raised claims similar to Easterling's. The *Shook* court pointed out that "in a case of this character, one where the defendant is suffering from the serious handicap of deafness, the court should exercise great care to see to it that the defendant is accorded his constitutional rights." *Id*. at 845. Defendant Shook claimed that the court erred

when he was forced to trial when he was "physically incompetent and may have been mentally incompetent." The court rejected Shook's argument, saying it was totally refuted by the facts, namely that though deaf, Shook could read lips and was a college student; that witnesses stated that they could communicate with him; and that the court made every effort to make sure Shook had a fair trial. Here Easterling claims that because he only had a ninth grade education, under the principles of *Shook*, he was denied due process. But the facts show he was not illiterate. He could read and write and stated at the plea hearing that he read and understood the plea petition. He was of sound mind, and he was able to work and maintain a family. He provided no proof of being mentally incompetent or mentally deficient. The court addressed his one disability—deafness—by providing a certified interpreter with whom Easterling met alone with his attorney, and who then assisted in the court proceedings. If he had been denied a translator during his arrest or interrogation, he did not raise this at his plea hearing. There being no evidence that he was denied an interpreter any earlier, other than his verified motion which was not even supported by his own affidavit, we find no denial of Easterling's due process rights. In addition, having knowingly and voluntarily entered a guilty plea, Easterling waived this and any defense that he may have had to the charge. *Belton v. State*, 138 So. 3d 237, 239 (¶9) (Miss. Ct. App. 2014).

II. **Whether based on his hearing impairment and mental deficiencies, Easterling lacked the capacity to enter a plea knowingly and voluntarily.**

A. *Defendant's Competency*

6

¶12. A defendant has a fundamental right not to be convicted while incompetent. *Pate v. Robinson*, 383 U.S. 375, 385-86 (1966). But "the law presumes a criminal defendant to be competent to stand trial [a]nd the defendant bears the burden to prove 'by substantial evidence that he or she is mentally incompetent to stand trial.'" *Pitchford v. State*, 240 So. 3d 1061, 1067 (¶32) (Miss. 2017). Under Rule 12.2 of the Mississippi Rules of Criminal Procedure, if the court on its own motion or the motion of any party, "has reasonable grounds to believe that the defendant is incompetent to stand trial, the court shall order the defendant to submit to a mental examination." MRCrP 12.2(2). Under Rule 12.5(a), after the submission of the report, the "the court, upon its own motion or motion of any party, shall promptly hold a hearing to determine the defendant's competency". MRCrP 12.5. In the absence of a reasonable doubt of a defendant's competency, the obligation *sua sponte* to order a competency hearing simply does not arise. *Pitchford*, 240 So. 3d at 1069 (¶40).

¶13. In the case before us, there was no proof presented to show that Easterling was not competent at the time of his plea. Neither the court nor his attorney raised any concerns about his competency. There was no finding of any reasonable grounds to believe Easterling was incompetent and no mental examination was requested by Easterling or ordered by the court. On appeal, Easterling provides no facts to show that reasonable grounds as to his mental competence had existed.

¶14. Easterling cites *Smith v. State*, 149 So. 3d 1047 (Miss. 2014), as support for his case. However the facts here are distinguishable from those in *Smith*. In *Smith*, the court had reasonable grounds to question the defendant's competence and ordered a competency

7

evaluation but it was never done. Thereafter, without a competency hearing, the trial court accepted a guilty plea from Smith who testified that he was on medication for depression "or psychosis or something like that." In his second post-conviction motion for relief, Smith attached affidavits from his parents stating that Smith had been institutionalized numerous times for drug addiction, bipolar disorder, and self-mutilation. No such evidence, or any evidence at all, was presented by Easterling to support his claim of mental incompetency. In the motion, Easterling's attorney further argues that Easterling faced all phases of his prosecution without an interpreter, which made his plea unknowing and involuntary. She argues that at the time of his arrest, Easterling was given no translator and thus he could not convey an accurate account of the events to police. Further, she argues that Easterling himself had been assaulted and required medical attention but was incarcerated instead. Unfortunately these were only *arguments* raised by Easterling's attorney in his motion. None of these facts appear in Easterling's affidavit,[3] nor did Easterling present any proof of these facts at the evidentiary hearing.

¶15.   Easterling says in his affidavit that he did not understand the charges against him, but he offers no proof to substantiate this contention. Although he notes his limited education in his affidavit, he offers no proof of "mental deficiencies." He could read and said at his plea hearing that he had read and understood the charges. When he claimed the opposite two years later in his Motion to Vacate, the trial court provided Easterling an evidentiary hearing where he could have brought forth evidence to support his claims—evidence of mental

---

[3] In his affidavit, Easterling states only that he was not afforded an *attorney* at any stage prior to court; there is no mention of being denied a translator.

deficiency, evidence to show he had been misunderstood, and the like. But he put nothing into evidence. He did not even testify himself to explain why he was reversing his position or why he was not fully aware of the consequences of his act when he pleaded guilty. Accordingly, the circuit court had no facts before it on which to find that his plea had been unintelligent or involuntary and the trial court did not err in its denial of Easterling's Motion on incompetency grounds.

### B. *Factual Basis for Charge*

¶16. The written Motion claims that the plea was not knowingly or voluntarily made because there was no factual basis for the aggravated assault charge and that Easterling had said at the plea hearing that what happened was an accident. Easterling's post conviction attorney argues that Easterling lacked the necessary intent to support the crime of aggravated assault. Easterling was charged under Mississippi Code Annotated section 97-3-7(2)(a) (Rev. 2014), which reads:

> A person is guilty of aggravated assault if he (i) attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life; or (ii) attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm . . . .

Easterling admitted he received a copy of the indictment that he read and reviewed it with his attorney. At the plea hearing, the State specifically stated that Easterling was charged with recklessly causing serious bodily injury to Kimberly Nicholson by striking her with his vehicle and pinning her to the wall. In such cases, proof of intent is not needed. "Reckless" is defined as:

9

> Characterized by the creation of a substantial and unjustifiable risk of harm to others and a conscious (and sometimes deliberate) disregard for or indifference to that risk; heedless; rash.

Black's Law Dictionary 1385 (9th ed. 2009). Recklessness involves a greater degree of fault than negligence but a lesser degree of fault than intentional wrongdoing.

¶17. Although Easterling said he accidentally pinned his sister to the wall with his vehicle, it is noted that his sister's husband had to forcibly take Easterling out of the vehicle to un-pin her. Such conduct can support a showing of recklessly causing her injury. Accordingly, we find that Easterling had notice of the true nature of the charge against him and there was independent evidence of his guilt. *See North Carolina v. Alford*, 400 U.S. 25 (1970) (guilty plea coupled with evidence from three witnesses was a sufficient basis for accepting the plea even though it was accompanied by a protestation of innocence).

¶18. The Court finds that there was a factual basis for the charge and that Easterling's plea was knowingly and voluntarily made.

### III. Whether Easterling's counsel was ineffective.

¶19. Easterling claims he was deprived of his constitutional right to counsel at the time of his plea, arguing that the attorney failed to properly investigate and present arguments on his behalf, that the attorney failed to argue his incompetency to the court, and that the attorney failed to argue that there was doubt as to whether Easterling acted intentionally.

¶20. *Strickland v. Washington*, 466 U.S. 669 (1984), sets out the standard for evaluating claims of ineffective counsel:

> First, the convicted defendant must show that counsel's representation fell below an objective standard of reasonableness. Second, the defendant must

10

> show there is reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. This test applies with equal validity to challenges to guilty pleas.

*Hannah v. State*, 943 So. 2d 20, 24 (¶6) (Miss. 2006) (citations omitted). The court reconstructs the circumstances of counsel's challenged conduct and evaluates it from counsel's perspective at the time. *Bell v. Cone*, 535 U.S. 685, 698 (2002) (citing *Strickland*, 466 U.S. at 689). A strong presumption exists that counsel's conduct "fell within the wide range of reasonable professional assistance." *Ross v. State*, 954 So. 2d 968, 1004 (¶79) (Miss. 2007) (citing *Howard v. State*, 853 So 2d. 781, 796 (¶¶45-46) (Miss. 2003)).

¶21. It is significant to this Court that in his affidavit in support of his Motion to Vacate his plea, Easterling mentions no complaints at all concerning his attorney's actions. Even if the allegations in his verified motion were to be considered, Easterling failed to attach any affidavits other than his own to support this contention. A claim of ineffective assistance of counsel must be supported by affidavits other than the defendant's. *McBride v. State*, 108 So. 3d 977, 980 (¶11) (Miss. Ct. App. 2012); *Patrickson v. State*, 242 So. 3d 939, 941 (¶7) (Miss. Ct. App. 2018); *Gaulden v. State*, 240 So. 3d 503, 510 (¶23) (Miss. Ct. App. 2018). Moreover, when he was afforded an evidentiary hearing on his motion, Easterling put nothing into evidence to show that there were additional facts that his prior attorney could have found but failed to do so. Even the defendant in *Hannah*, which Easterling cites as precedent, provided the reviewing court with medical records showing that her husband had identified another woman as his attacker. *Hannah*, 943 So. 2d at 24 (¶8). Here, Easterling provided nothing new or exculpatory at the hearing on his post-conviction motion.

¶22.    In the Motion, Easterling claims that his prior counsel had failed to argue that Easterling had not been afforded a translator while the case was being investigated. However, he made no mention of this in his personal affidavit and provided no independent supporting affidavits for this contention.  In *Chapman v. State*, 47 So. 3d 203, 207 (¶¶16-17) (Miss. Ct. App. 2010), we found that even "verification" of a motion which contained a laundry list of unsupported allegations was insufficient when no supporting affidavits were provided or good cause shown for failing to provide them.  Here there was no evidence that Easterling had not been afforded a translator during the investigation except in his verified motion, nor was there any evidence presented on the issue of incompetence.

¶23.    At his plea hearing, Easterling was specifically asked about his counsel, Brandi Hambright's services:

Q.    Did you discuss this charge with your attorney?

A.    Yes. . . .

Q.    Has Ms. Hambright made any kind of threat or promise to you about anything?

A.    No.

Q.    Are you satisfied with the services of Ms. Hambright as your attorney?

A.    Yes.

¶24.    The circuit court specifically brought to Easterling's attention that had he gone to trial, he could have brought up violations of any of his rights, such as an illegal arrest or an illegal statement:

Q.    Now, there may be some other rights that you have that I've not gone

12

over with you that you may feel like were violated since you were arrested. That would be like an illegal arrest or an illegal statement taken from you or a speedy trial issue. Those are just examples of the type motions you could file.

A. Yes.

Q. I would listen to that evidence and decide whether or not your rights were violated.

A. Okay.

Q. All right. Now do you understand that, if you plead guilty today, you cannot bring up any of those type issues before this court or any other court?

A. Yes, I understand.

Q. Now, knowing all of the rights that you're waiving by pleading guilty, do you still want to plead guilty to this charge?

A. Yes

Easterling replied that he knew he was waiving those rights as well.

¶25. The Court finds that Easterling has failed to present evidence of errors on the part of his initial counsel and that his claims of ineffective counsel are without merit.

## CONCLUSION

¶26. Because Easterling has failed to show that he was deprived any constitutional right at his plea and sentencing hearings because there was no proof that Easterling's guilty plea was not given knowingly and voluntarily nor due to any alleged incompetence, and there was no proof of ineffective counsel. Accordingly, the circuit court's denial of Easterling's post-conviction relief motion is hereby affirmed.

¶27. **AFFIRMED.**

13

**BARNES, C.J., CARLTON AND J. WILSON, P.JJ., GREENLEE, WESTBROOKS, TINDELL AND C. WILSON, JJ., CONCUR. McCARTY, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION, JOINED BY WESTBROOKS, J. LAWRENCE, J., NOT PARTICIPATING.**

**McCARTY, J., SPECIALLY CONCURRING:**

¶28. Were this any other guilty plea, I would have little hesitation in joining the majority's conclusion. However, today's case addresses a person who all sides agree has a hearing impairment. Mr. Easterling has possessed this impairment since birth. Multiple members of his family are also hearing impaired, including his sister, of whom he plead guilty of assaulting.

¶29. Our Legislature has created a precise series of steps that must be followed when law enforcement and the Courts interact with a person with a hearing impairment in order to safeguard their rights. From the record, it appears the law was repeatedly not followed. However, because Mr. Easterling plead guilty, and this waiver erased the violations of law, I agree that his request to set aside his guilty plea must be denied.

¶30. The law requiring interpreters is not ambiguous. "In the event that a deaf person has been detained in police custody or has been arrested for any alleged violation of a criminal law, a qualified interpreter or, upon request, an oral interpreter *shall* be provided by the arresting officer and his superiors prior to any interrogation or taking of a statement from the person." Miss. Code Ann. § 13-1-303 (3) (Rev. 2012) (emphasis added). "A basic tenet of statutory construction constrains us to conclude that, unlike the discretionary nature of 'may,' the word 'shall' is a mandatory directive." *Ivy v. Harrington*, 644 So. 2d 1218, 1221 (Miss. 1994). When the Legislature uses that word, "no discretion is afforded . . . ." *Id.*

14

¶31. At its core, this law simply affirms that when the State is bringing its might to bear against an individual, the State must be able to communicate the charges and concerns to comport with due process. The interpreter guarantees that communication works with a person who has a hearing impairment.

¶32. Furthermore, the law states that "[a]ny statement made by a deaf person to a law enforcement officer may be used as evidence against that person *only if* the statement was made, offered or elicited in the presence of a qualified interpreter of the deaf sign language." Miss. Code Ann. § 13-1-303(5) (emphasis added). "No statements taken from such deaf person prior to the presence of a qualified interpreter may be admissible in court." Miss. Code Ann. § 13-1-303(5). The Legislature therefore has installed real teeth in the law to safeguard those possessing hearing impairments with qualified interpreters in order to ensure due process.

¶33. The majority notes that there is no information in the record which supports Mr. Easterling's claim he was not provided an interpreter until his guilty plea beyond his verified pleading. Although Easterling verified the motion and swore before a notary "that the facts and allegations set forth" in it were "true and correct as therein stated," we must accept this as evidence. This evidence likewise means his claim that "[h]e was granted a translator for court appearances only and had no knowledge or understanding of the proceedings taking place around him beginning even prior to his arrest" must be taken as true. So must his sworn testimony that "[h]e was arrested without a translator" and "questioned by law enforcement without a translator," all of which are in facial violation of section 13-1-303.

15

¶34. I believe we must take these statements as true because "[u]ndisputed testimony, which is not so unreasonable as to be unbelievable, must be taken as truth." *Reeves Royalty Co. Ltd. v. ANB Pump Truck Serv.*, 513 So. 2d 595, 599 (Miss. 1987). For "in the absence of contradictory evidence, courts are bound to accept the only credible evidence offered in a proceeding and apply the correct law." *MSU v. PETA*, 992 So. 2d 595, 607 (¶20) (Miss. 2008).

¶35. Yet ultimately Mr. Easterling pleaded guilty, and in doing so agreed he was "waiving all of [his] constitutional rights," which by implication includes those due process rights protected by section 13-1-303. This waiver can operate to bar even flaws of a constitutional magnitude. *See Keyes v. State*, No. 2017-CP-00712-COA, 2019 WL 125708, at *2 (Miss. Ct. App. Jan. 8, 2019).

¶36. This valid plea means we must affirm. In a different circumstance, in order to honor due process – and the Legislature's exacting procedure to safeguard it – I believe we would be required to reverse.

**WESTBROOKS, J., JOINS THIS OPINION.**