# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2004-IA-01251-SCT

*JOSEPH AUSTIN, M.D. AND VICKSBURG
HEALTHCARE, LLC*

*v.*

*KATHY WELLS AND CURTIS WELLS, SR.*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/07/2004 |
| TRIAL JUDGE: | HON. LAMAR PICKARD |
| COURT FROM WHICH APPEALED: | JEFFERSON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | LEE DAVIS THAMES, JR. |
| | R. E. PARKER, JR. |
| | ROBERT L. GIBBS |
| | TESELYN AFRIQUE FUNCHES |
| ATTORNEYS FOR APPELLEES: | CARROLL RHODES |
| | E. VINCENT DAVIS |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | REVERSED AND REMANDED - 01/19/2006 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE SMITH, C.J., CARLSON AND RANDOLPH, JJ.**

**CARLSON, JUSTICE, FOR THE COURT:**

¶1.     This case comes to us via an interlocutory appeal after the Jefferson County Circuit Court entered an order denying the defendants' motion to transfer venue to Warren County. Finding reversible error in the refusal to transfer venue, we reverse the circuit court's judgment to that effect and remand this case to the circuit court for prompt entry of an order transferring this case to the Circuit Court of Warren County.

**FACTS AND PROCEEDINGS IN THE TRIAL COURT**

¶2.    This medical malpractice suit stems from the performance of an operative procedure known as a total vaginal hysterectomy/bilateral salpingo-oophorectomy.    Specifically, Kathy Wells, and her husband, Curtis Wells, both adult resident citizens of Jefferson County, claim that Mrs. Wells's doctor, Joseph Austin, M.D., a resident of Warren County, Mississippi, was negligent in treating Mrs. Wells to the extent that Dr. Austin not only failed to provide her with information about the risks and alternatives associated with her condition so as to facilitate her informed consent, but he also failed to properly treat the complications that arose in the months following surgery.

¶3.    Mrs. Wells's hysterectomy, which required the removal of her reproductive organs including her uterus and ovaries, was performed on November 19, 2001, at Parkview Regional Medical Center in Warren County, Mississippi.    In the months following the hysterectomy, Mrs. Wells visited Dr. Austin on several occasions complaining of persistent right pelvic and groin pain.    The initial follow-up visits led Dr. Austin to prescribe several rounds of antibiotic medication in order to fight off possible infection.    After a couple of months and persistent problems, Dr. Austin ultimately referred Mrs. Wells to a specialist and ordered a pelvic CT scan.    The referred radiologist, Dr. John C. Stepan of the River Region Medical Center, reviewed Mrs. Wells' case and reported that her CT scan was normal.[1]

---

[1]Dr. Stepan is a resident of Warren County, Mississippi, and the River Region Medical Center is located in Vicksburg, Warren County, Mississippi.

¶4. On February 11, 2002, some twelve weeks after her surgery, Mrs. Wells experienced problems with breathing which necessitated her treatment in the emergency room at the Jefferson County Hospital (JCH) in Fayette, Mississippi. The record reveals that during her visit to JCH, Mrs. Wells's primary complaint was documented as "can't breathe" and she was noted to have a respiratory rate of 26 breaths per minute and a pulse oximetry reading of normal. Other symptoms recorded by the hospital staff included nasal congestion, runny nose and a history of sinusitis. Ultimately, the staff at JCH treated Mrs. Wells for sinusitis and released her.

¶5. Three days after her visit to JCH, Mrs. Wells, who was still suffering from pain in her right lower quadrant, was taken to St. Dominic Hospital in Jackson, Hinds County, Mississippi. Upon admission to St. Dominic, Mrs. Wells met with Dr. John Mladineo and presented a history of persistent right lower quadrant pain, low-grade fever and a general malaise which had been ongoing since her hysterectomy. After a pelvic examination, the doctors at St. Dominic determined Mrs. Wells's pain was coming from what was diagnosed as "an ill defined mass effect on the right pelvic side wall which is exquisitely tender." Based on this finding, a staff radiologist at St. Dominic re-examined the pelvic CT scan ordered by Dr. Austin on January 23, 2002, and specifically diagnosed Mrs. Wells as having an infected hematoma and an ovarian thrombosis. Mrs. Wells was subsequently admitted to St. Dominic where she was given a 10 day course of IV antibiotic therapy and anti-coagulates. Ultimately, in April of 2002, Mrs. Wells underwent a laparotomy for resection of the pelvic mass and lysis of extensive adhesions.

¶6.     On December 31, 2002, Kathy and Curtis Wells, Sr., filed their complaint against Jefferson County Hospital, Vicksburg Healthcare, LLC[2] and Dr. Joseph Austin, wherein they claimed the sum of the defendants' negligent acts caused Mrs. Wells to suffer physical pain, emotional distress, loss of wages, loss of wage earning capacity, loss of enjoyment of life, and permanent disfigurement.    After filing their respective answers, Vicksburg Healthcare and Dr. Austin filed a joint motion to transfer venue in which they claimed JCH had been fraudulently included in the suit for purposes of establishing venue in Jefferson County, and that the Wellses had not presented the court with a reasonable claim of liability against JCH.    Through their motion, the defendants sought a transfer of venue to Warren County.    In support of this motion, the defendants averred that the Wellses' initial pre-suit notice of claim to each of the parties, while alleging a breach of duty for a failure to maintain an appropriate standard of care concerning Mrs. Wells's treatment at JCH, made no mention of how this breach of duty injured Mrs. Wells.    Additionally, the defendants' motion noted that JCH settled the Wellses' claim against it, on October 20, 2003, and was thus no longer a party to the suit since it had been dismissed with prejudice.

---

[2]In their original complaint, the plaintiffs sued Jefferson County Hospital, River Region Medical Foundation, River Region Health Systems, Inc., d/b/a Parkview Regional Medical Center, d/b/a The Street Clinic,. Joseph Austin, M.D., John Stepan, M.D., and unknown corporations and parties. On May 5, 2003, the circuit court dismissed River Region Medical Foundation and River Region Health Systems, Inc. as parties to this action. On that same day, the court also entered an order substituting Vicksburg Healthcare, LLC, as a defendant in the place of River Region Health Systems, Inc., d/b/a Parkview Regional Medical Center and d/b/a The Street Clinic. Additionally, Dr. John Stepan was voluntarily dismissed from the suit on December 8, 2003.

¶7.    The Wellses filed their response to the motion to transfer venue on October 23, 2003, and attached supplemental exhibits to their motion on December 8, 2003, which included a supplemental affidavit from Dr. Lisa P. Otey.   On December 11, 2003, the Wellses filed a letter brief supplementing their response.[3]   On January 26, 2004, the circuit court entered its memorandum opinion and order denying the defendants' joint motion to transfer venue.   The trial court denied certification for an interlocutory appeal, and this Court subsequently denied the defendants' petition for interlocutory appeal on February 4, 2004.

¶8.    On May 10, 2004, Dr. Austin renewed his motion to transfer venue, and, after the Wellses filed their response, Vicksburg Healthcare joined Dr. Austin's renewed motion and also filed a motion to strike the supplemental affidavit of Dr. Lisa Otey.   The circuit court again denied the defendants' motion to transfer venue and again denied the defendants' joint motion to certify interlocutory appeal.    However, this Court granted the defendants' petition for interlocutory appeal.   *See* M.R.A.P. 5.   Therefore, we now review the trial court's denial of the defendants' motion to transfer venue from Jefferson County to Warren County.

## DISCUSSION

¶9.    We apply an abuse of discretion standard of review to decisions made by a trial court concerning a motion for a change of venue.   ***Wayne Gen. Hosp. v. Hayes***, 868 So.2d 997, 1002 (Miss. 2004); *see also* ***Christian v. McDonald***, 907 So.2d 286, 287-88 (Miss. 2005); ***Stubbs v. Miss. Farm Bureau Cas. Ins. Co.***, 825 So.2d 8, 12 (Miss. 2002); ***McCain Bldrs., Inc. v.***

---

[3]Lisa P. Otey, M.D., is licensed to practice medicine in the States of Texas and Tennessee and currently resides in Houston, Texas.

***Rescue Rooter, LLC***, 797 So.2d 952, 954 (Miss. 2001); ***Donald v. Amoco Prod. Co.***, 735 So.2d 161, 180 (Miss. 1999). We have stated that "[t]he trial judge's ruling will not be disturbed on appeal unless it clearly appears that there has been an abuse of discretion or that the discretion has not been justly and properly exercised under the circumstances of the case." ***Wayne Gen. Hosp.***, 868 So. 2d at 1002 (citing ***Stubbs***, 825 So.2d at 12; ***McCain Bldrs.***, 797 So.2d at 954; ***Beech v. Leaf River Forest Prods., Inc.***, 691 So.2d 446, 448 (Miss. 1997)). Additionally, we have held that "proper venue is determined at the time the lawsuit is originally filed, and subsequent dismissal of the defendant upon whom venue is based does not destroy proper venue." ***Estate of Jones v. Quinn***, 716 So.2d 624, 628 (Miss. 1998) (citing ***Blackledge v. Scott***, 530 So.2d 1363, 1365 (Miss. 1988)).

¶10.    The procedure for determining venue in Mississippi is well-defined.    Moreover, Miss. R. Civ. P. 82(b) provides that "[e]xcept as provided by this rule, venue of all actions shall be as provided by statute."    Stated differently, the Mississippi Rules of Civil Procedure generally defer to legislative instruction for the purposes of determining venue.    Accordingly, we turn to Miss. Code Ann. Section 11-11-3, which provides that venue will lie in a county where a legitimate defendant resides or where a substantial alleged act or omission occurred.[4]

---

[4]Miss. Code Ann. § 11-11-3, as it existed when this cause of action was filed, stated in pertinent part:

Civil actions of which the circuit court has original jurisdiction shall be commenced in the county in which the defendant or any of them may be found or in the county where the cause of action may occur or accrue and, if the defendant is a domestic corporation, in the county in which said corporation is domiciled or in the county where the cause of action may occur or accrue, except where otherwise provided....If a civil action is brought in an improper county, such action may be transferred to the proper county pursuant to section 11-11-17.

6

Pursuant to statute, a plaintiff selects among permissible venues, and we have stated that the plaintiff's choice must be sustained unless, upon judicial scrutiny, it is determined that there is no factual basis for the claim of venue. *Flight Line, Inc. v. Tanksley*, 608 So.2d 1149, 1155 (Miss. 1992).[5] Notably, this Court applies de novo review to matters regarding statutory interpretation. *Christian*, 907 So.2d at 287 (citing *Wallace v. Town of Raleigh*, 815 So.2d 1203, 1206 (Miss. 2002)).

### I. WHETHER THE WELLSES' ACTION AGAINST JEFFERSON COUNTY HOSPITAL WAS PREMISED ON A REASONABLE CLAIM OF LIABILITY THUS MAKING VENUE PROPER IN JEFFERSON COUNTY

¶11. Today's interlocutory appeal requires us to determine the viability of the claim asserted against Jefferson County Hospital, the defendant through whom venue has been established. Moreover, since the defendants, Dr. Austin and Vicksburg Healthcare, premise their motion for a change of venue on the assertion that JCH was made a party to this suit for the sole purpose of establishing venue in Jefferson County, we must test the factual basis on which the Wellses predicate their suit against JCH. Quite simply, we have to determine whether JCH was

---

[5]However, we note here that, while not applicable to today's case, this Court amended Miss. R. Civ. P. 82 to add subsection (e), which states:

> **(e) Forum Non-conveniens.** With respect to actions filed in an appropriate venue where venue is not otherwise designated or limited by statute, the court may, for the convenience of the parties and witnesses or in the interest of justice, transfer any action or any claim in any civil action to any court in which the action might have been properly filed and the case shall proceed as though originally filed therein.

Rule 82(e) became effective for cases filed after February 20, 2004. *See also* the Comment under Rule 82 which discusses in detail the addition and effect of Rule 82(e).

fraudulently joined as a nominal party to the suit in order to gain access to the circuit court in Jefferson County.

¶12.    The substance of Mrs. Wells's claim against JCH relies on a causal connection between the hospital's alleged failure to perform an arterial blood gas and the three extra days of pain Mrs. Wells endured between her visit to JCH and St. Dominic.    Mrs. Wells supports her complaint against JCH with an affidavit supplied by Lisa P. Otey, M.D., which states:

> The records from the Jefferson County Emergency Room staff revealed that Mrs. Wells was evaluated February 11, 2002, for the primary complaint "can't breathe."  She had a documented increase of her respiration rate at 26 breaths per minute.   Since she was within eight weeks of her postoperative care, pulmonary embolism (a life-threatening condition in which a clot(s) break(s) away and obstructs the pulmonary arteries) should have been a consideration. The minimum work up therefore should have included an arterial blood gas.  This test was not performed and therefore breached the standard of care for patients presenting in this way.

Based on this analysis, Mrs. Wells contends that if JCH had hospitalized her and performed the test for pulmonary embolus, it might have discovered the existence of an infected hematoma and an ovarian vein thrombosis, which were the cause for her continued pain. Moreover, Mrs. Wells maintains that since she was not hospitalized on February 11, 2002, negating the possibility to run the battery of tests, she had three additional days of suffering before going to St. Dominic.  Conversely, the defendants argue that Dr. Otey's analysis of Mrs. Wells's emergency room visit to JCH fails to establish causation and damages, and thus fails to establish a reasonable claim against the hospital.   The defendants opine that the alleged negligence related to JCH's determination not to perform a test designed to discover a pulmonary embolus can in no way be causally linked to the abdominal pain or femoral nerve

8

damage on which Mrs. Wells bases her claim for damages. Ultimately, the defendants assert that since there is no reasonable claim against JCH, venue in Jefferson County is improper. We agree.

¶13. In *Myers v. Vinson*, 212 Miss. 85, 89, 54 So.2d 168, 169 (1951), we outlined the requisites for properly establishing venue in a suit where multiple defendants have been named and stated "[u]nquestionably the general rule is that where there are two or more defendants to a transitory cause of action whose venue is fixed by statute in either of two or more counties, the plaintiff or complainant may elect to bring the suit in either county, provided the defendant in the county where the suit is brought is a material party and there is a valid cause of action against him and he is not fraudulently joined for the purpose of fixing venue." *Myers*, 212 Miss. at 89, 54 So.2d at 169 (citing *Miss. Power & Light Co. v. Lowe*, 179 Miss. 377, 175 So. 196 (1937); *Daniel v. Livingstone*, 168 Miss. 311, 150 So. 662 (1933); *Indianola Cotton Oil Co. v. Crowley*, 121 Miss. 262, 83 So. 409 (1920)). The logic behind our general rule is quite practical when one considers its purpose is to prevent a plaintiff from fraudulently manipulating the legal advantages created by joinder and forum selection when instituting a suit. Moreover, it is certainly appropriate that a plaintiff be required to clearly evidence that a party against whom there exists a valid claim has been properly included when determining the venue in which a defendant will be required to defend himself.

¶14. In recent years this Court has fleshed out the general rule stated in *Myers*, and while the test now includes additional subjective elements of intent, the essential feature to the viability

9

of an action on which venue relies is still based on the validity of the plaintiff's asserted cause of action. In *Wayne General Hosp. v. Hayes*, 868 So.2d 997, 1002 (Miss. 2004), we stated our current test and focused on the necessity of undertaking an objective factual review of the elements comprising the forum-fixing claim:

> Where an action is properly brought in a county in which one of the defendants resides, it may be retained notwithstanding there is a dismissal of the resident defendant, provided the following exists – [1] the action was begun in good faith in the bona fide belief that plaintiff had a cause of action against the resident defendant; [2] the joinder of the local defendant was not fraudulent or frivolous, with the intention of depriving the non-resident defendant of his right to be sued in his own county; [3] and there was a *reasonable claim of liability* asserted against the resident defendant. *Estate of Jones,* 716 So.2d at 627 (citing *New Biloxi Hosp., Inc. v. Frazier*, 245 Miss. 185, 146 So.2d 882, 885 (1962)). When determining whether fraud was involved in the joining of defendants "*the proper question is not whether the plaintiff's attorney intended to fraudulently establish venue, but whether the facts support inclusion of the defendant upon whom venue is based.*" *Estate of Jones*, 716 So.2d at 628 (citing *Jefferson v. Magee,* 205 So.2d 281, 283 (Miss. 1967)).

*Wayne Gen. Hosp.*, 868 So.2d at 1002 (emphasis added).

¶15.    In *Wayne General Hospital*, a case involving several different care providers from different counties, we undertook review of a medical malpractice suit in which venue was based on the inclusion of the University of Mississippi Medical Center (UMMC) as a defendant.    Specifically, we examined the forum-fixing claim brought against UMMC and, in so doing, outlined the basic elements necessary to properly establish a valid medical malpractice claim:

> In order to prevail in a medical malpractice action, a plaintiff must establish, by expert testimony, the standard of acceptable professional practice; that the defendant physician deviated from that standard; and that the deviation from the

10

standard of acceptable professional practice was the proximate cause of the injury of which plaintiff complains. ***Brown v. Baptist Mem'l Hosp. DeSoto, Inc.***, 806 So.2d 1131, 1134 (Miss. 2002) (citing ***Phillips ex rel. Phillips v. Hull***, 516 So.2d 488, 491 (Miss. 1987)). *See also* ***Palmer v. Biloxi Reg'l Med. Ctr., Inc.***, 564 So.2d 1346, 1355 (Miss. 1990).

*Id.* at 1002-03. In determining that the plaintiffs' voluntary dismissal of the forum-fixing party precluded their suit from remaining in Hinds County, we reasoned that "[i]f the plaintiff's claims could not survive a motion for summary judgment...then they clearly failed to assert a reasonable claim of liability against the UMMC Defendants." *Id*. at 1003.

¶16. In today's case, this Court is presented with a medical malpractice claim which names multiple parties and connects them to a single injury through a series of occurrences of alleged negligence. For purposes of determining venue, we must isolate the venue-fixing claim and distinguish its substance and validity. Moreover, just as we did in ***Wayne General Hospital***, we must determine whether the claim brought against the forum-fixing party is legally valid and whether the Wellses produced sufficient factual evidence in the form of expert testimony to establish the reasonableness of their venue-fixing claim against JCH. In contrast to ***Wayne General Hospital***, we can not assume the Wellses claim was unreasonable and ripe for summary judgment as their claim against JCH was settled instead of voluntarily dismissed. Thus, we look to the factual basis offered in support of the Wellses claim.

¶17. In order to establish a reasonable claim against JCH and properly maintain venue in Jefferson County, the Wellses must establish a standard of care owed to Mrs. Wells by JCH, a deviation from that standard of care, and some logical proximate causal relationship between

11

JCH's deviation and the injury on which Mrs. Wells bases her complaint. While the first two of these elements can be extracted from Dr. Lisa Otey's expert testimony, the basis of these elements has no causal connection to Mrs. Wells's injury. Moreover, Mrs. Wells's claim for damages against JCH depends on the hospital's failure to perform a test designed to discover an affliction from which Mrs. Wells did not suffer.

¶18. The causal connection offered by the Wellses in support of their malpractice claim against JCH is tenuous at best. Moreover, the only act of negligence offered by their expert witness is completely premised on the necessity of the JCH staff ordering an arteriogram/ arterial blood gas. Importantly, such a test is performed when there are present symptoms indicating that one is afflicted with a pulmonary embolus. Interestingly, no such symptoms were recorded. At the motion hearing of December 8, 2003, the defendants' expert testimony of Dr. Frederick Barnett Carlton, Jr., revealed:

> Q: Dr. Carlton, what were the symptoms that – that this patient expressed when she came in the emergency room?
> A: The initial complaints as taken down by the nurse was (sic) that she had chronic recurrent sinusitis and had nasal congestion, and that was with pharyngeal irritation; in other words, a sore throat. The chief complaint when she presented was can't breathe. The addendum that we've been talking about addresses the other matters of – I already mentioned the nasal congestion. That's where the comment about not being able to breathe at night is addressed. And the other complaints that weren't specifically addressed on the first page are – in addition to the nasal congestion are stuffiness and a runny nose.

¶19. A major symptom that might have led the staff at JCH to perform an arterial blood gas is abdominal pain. In Dr. Otey's deposition, we learn that this important symptom was never recorded:

12

Q. Let me ask you to turn to that entry where she was in the Jefferson County emergency room on February 11, 2002.

A. Okay.

Q. And there's no complaint there that anybody recorded she [Mrs. Wells] had any abdominal pain that day?

A. No.

...

Q. ...neither Dr. Bills or the people at the Jefferson County Hospital–

A. Documented.

Q. –documented it [abdominal pain], did they?

A. No, they did not document it.

¶20. Even if it could be shown that the doctors in the ER at JCH deviated from the standard of care common to Mrs. Wells's symptoms by not recognizing the need to test Mrs. Wells for a pulmonary embolus, their failure to test can not give rise to a reasonable claim of liability inasmuch as Mrs. Wells never suffered from a pulmonary embolus. We learn through the Wellses own expert that an arteriogram/ arterial blood gas is a test designated for the purpose of discovering a pulmonary embolus – a life threatening condition which Mrs. Wells most certainly did not have. Additionally, the Wellses expert, Dr. Otey, admitted that there was nothing that JCH could have done to relieve Mrs. Wells's pain:

Q. Well, we've established that her pain only subsided after she had the adhesions lysed and the thrombus taken out?

R. Okay.

Q. So you didn't expect the Jefferson County Hospital emergency room to do that surgery that night, did you?

A. No.

...

Q. ...But you would have not expected the Jefferson County Hospital to have performed any surgery on her to alleviate that – that alleged [lower right quadrant] pain, abdominal pain, would you?

A. No.

Q. In fact, even assuming that she did make that complaint, she already had – she already had this abdominal complaint before she went there, didn't she?

A. Yes.

Q. And she continued having it several months later?

A. Yes.

Q. So there's nothing that the Jefferson County Hospital could do or their nurses to alleviate that pain that night, was there?

A. Just give – not the pain, but they can have a higher suspicion of working her up for a pulmonary embolus.

Q. Other than that?

A. Other than that, no sir.

Q. There was no other negligence that you know of that the Jefferson County Hospital or nurses did?

A. No. She – No.

...

Q. And the only thing that Jefferson County Hospital did, according to what I understand from you, is did not test her for a pulmonary embolus?

A. That's all.

Q. Which didn't materialize?

A. Correct.

¶21. The facts of the Wellses claim, as revealed by their expert's testimony, fail to support a sufficient causal connection between JCH's alleged negligent treatment of Mrs. Wells and the affliction upon which her claim is based – an infected hematoma and an ovarian thrombosis. Moreover, the Wellses have not advanced a reasonable claim of liability against JCH as JCH's failure to perform an arterial blood gas in an attempt to test if Mrs. Wells had a pulmonary embolus did not cause the pain Mrs. Wells suffered from before, during or after her visit to JCH – pain stemming from her hysterectomy performed on November 19, 2001, at the Parkview Regional Medical Center. Because the Wellses failed to establish a proper factual basis to support a reasonable claim of liability against JCH, we find that venue in Jefferson County is improper. Thus, the Wellses have failed to satisfy the third prong of the *Frazier* test

14

that there was a reasonable claim of liability asserted against the resident defendant, Jefferson County Hospital. *Frazier*, 146 So.2d at 885; *see also* **Wayne Gen. Hosp.**, 868 So.2d at 1002-03. The only remaining defendants in this lawsuit are Dr. Austin and Vicksburg HealthCare, both Warren County residents. All remaining claims of negligence by these defendants occurred in Warren County. The trial court erred in denying the defendants' motion to transfer venue from Jefferson County to Warren County. Miss. Code Ann. §§ 11-11-3, -17.

## II. WHETHER LISA OTEY'S AFFIDAVITS VIOLATED THE MODIFIED *DAUBERT* STANDARD

¶22. Based on our disposition of Issue I, this issue need not be addressed.

### CONCLUSION

¶23. The crux of today's interlocutory appeal lies in the viability of the claim that Mr. and Mrs. Wells asserted against the Jefferson County Hospital. Accordingly, the factual basis on which the Wellses base their claim against JCH, which is predicated on the expert testimony of Dr. Lisa Otey, fails to evidence a causal connection between the hospital's alleged negligence and Mrs. Wells's injury. Therefore, we find that the circuit court erred in denying the defendants' motion to transfer venue from Jefferson County to Warren County. Thus, we reverse the judgment of the Circuit Court of Jefferson County denying the defendants' motion to transfer venue to Warren County and remand this case to the Jefferson County Circuit Court for prompt entry of an order transferring this case to the Circuit Court of Warren County for further proceedings.

¶24.   **REVERSED AND REMANDED**.

**SMITH, C.J., WALLER AND COBB., P.JJ., DICKINSON AND RANDOLPH, JJ., CONCUR.   EASLEY AND GRAVES, JJ., DISSENT WITHOUT SEPARATE WRITTEN OPINION.   DIAZ, J., NOT PARTICIPATING.**