# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2005-IA-01868-SCT

*ANDREW H. CRENSHAW, M.D.*

*v.*

*MICHAEL A. ROMAN AND EVA E. ROMAN*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/20/2005 |
| TRIAL JUDGE: | HON. HENRY L. LACKEY |
| COURT FROM WHICH APPEALED: | MARSHALL COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | CLINTON M. GUENTHER |
| ATTORNEY FOR APPELLEES: | JAMES KIZER JONES |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | REVERSED AND REMANDED - 11/16/2006 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**EASLEY, JUSTICE, FOR THE COURT:**

### PROCEDURAL HISTORY

¶1.     Michael A. Roman and Eva E. Roman (Eva), collectively "the Romans," filed suit on December 31, 2002, in the Circuit Court of Marshall County, Mississippi, against Wal-Mart Stores, Inc. (Wal-Mart), Baptist Memorial Hospital-DeSoto, Inc. (BMH-DeSoto), and Andrew H. Crenshaw, Jr., M.D. (Dr. Crenshaw).  The Romans lived in Holly Springs, Marshall County, Mississippi.  The Romans were shopping at the Wal-Mart store located in Southaven, DeSoto County, Mississippi, when Eva allegedly slipped and fell on a slippery surface in the store.  Eva

was transported by ambulance directly to BMH-DeSoto for medical treatment. Dr. Crenshaw, an orthopedic surgeon, performed *all* three of Eva's surgeries at BMH-DeSoto.

¶2. Wal-Mart is a non-resident defendant incorporated in the State of Delaware, doing business in the State of Mississippi. BMH-DeSoto is a resident corporation organized under the laws of the State of Mississippi with its principal place of business located at 1605 Stateline Road, Southaven, DeSoto County, Mississippi. Dr. Crenshaw is a non-resident defendant who resided in Shelby County, Tennessee, but he practiced medicine at the Campbell Clinic, 7545 Airways Boulevard, Southaven, DeSoto County, Mississippi.

¶3. The Romans' complaint alleged that while shopping at the Wal-Mart store, Eva fell and broke her right hip as result of Wal-Mart's negligence in allowing a slippery surface to exist on its floor. The Romans alleged that BMH-DeSoto's personnel and Dr. Crenshaw were guilty of negligence in providing their medical treatment. All the alleged acts of medical negligence against the hospital personnel and Dr. Crenshaw occurred at BMH-DeSoto located in DeSoto County.

¶4. All three defendants filed answers to the complaint and executed an agreed scheduling order in the case.[1] BMH-DeSoto filed a motion to vacate deadlines and to stay proceedings due its insurer, Reciprocal of America, being placed in receivership for rehabilitation or liquidation. On September 20, 2003, the trial court entered an agreed order staying the proceedings in the case.

---

[1] Wal-Mart's answer was not made part of the record submitted on appeal, but the certified circuit clerk's docket indicates that an answer was filed.

2

¶5. On June 22, 2005, Dr. Crenshaw filed a pre-trial motion for change of venue from Marshall County to DeSoto County relying on this Court's opinion in **Baptist Memorial Hospital-DeSoto County v. Bailey**, 919 So. 2d 1 (Miss. 2005), which was handed down by this Court on June 2, 2005. On July 7, 2005, Dr. Crenshaw further filed a motion to amend his answer pursuant to M.R.C.P. 15(a) to allow the affirmative defense of improper venue.

¶6. Likewise, BMH-DeSoto on July 7, 2005, filed its motion to amend its answer and defenses pursuant to M.R.C.P. 15(a) to include the affirmative defense of improper venue. On July 19, 2005, the trial court filed the order granting the Romans' voluntary dismissal of all claims against BMH-DeSoto with prejudice.[2]

¶7. On September 12, 2005, Wal-Mart filed its motion to join into Dr. Crenshaw's motion to transfer venue, incorporating the argument advanced by Dr. Crenshaw. On September 23, 2005, the trial court filed its order denying the defendants' motion to transfer venue, providing no explanation in the order for the denial. On January 11, 2006, this Court entered its order granting Dr. Crenshaw's petition for interlocutory appeal. *See* M.R.A.P. 5.

## FACTS[3]

¶8. On or about August 29, 2001, the Romans were shopping at Wal-Mart, store number 0848, located at 6811 Southcrest Parkway, Southaven, DeSoto County, Mississippi, when Eva

---

[2] The record does not indicate that BMH-DeSoto paid any monetary compensation or settlement to the Romans in exchange for the dismissal with prejudice.

[3] The factual allegations are largely taken from the Romans' filed complaint due to the stage in the proceedings when the interlocutory appeal was granted.

3

allegedly slipped and fell due to a slippery surface condition of the floor, breaking her right hip. Eva was transported by ambulance to BMH-DeSoto for examination and treatment. Eva was admitted to BMH-DeSoto, where on August 30, 2001, Dr. Crenshaw performed Eva's surgery to repair her right hip.

¶9.     Eva advised BMH-DeSoto that she had certain allergies to latex, vinyl, rubber, codeine, sulfa, and *nickel*.    The allergy information was noted in Eva's hospital adult admission profile/history/assessment care plan and its discharge summary.    However, during surgery Dr. Crenshaw implanted a stainless steel "Recon nail," which was partially made of *nickel*, to repair Eva's hip.    Eva allegedly began to experience a rash which caused redness, swelling, itching, and pain.    When Eva reported her discomfort to Dr. Crenshaw during her follow-up visit, he did not take any further action.    Eva then allegedly sought treatment from a dermatologist for her rash on or about November 30, 2001.    According to Eva's complaint, this was the first time that she learned that the "Recon nail" implanted in her hip was partially made of nickel.

¶10.     On December 5, 2001, Eva underwent her second surgery to remove the "Recon nail" composed of nickel.    Dr. Crenshaw performed the second surgery.    Dr. Crenshaw then implanted a "Trigen tan nail" made of titanium.    However, Dr. Crenshaw allegedly inserted a titanium nail which an x-ray revealed was too long.    Dr. Crenshaw was called back to the hospital to perform a third surgery on Eva to remove the incorrect length nail and implant a new titanium nail of the correct length.

¶11. On interlocutory appeal, Dr. Crenshaw raises the issue of whether the trial court erred in denying his motion to transfer the case from Marshall County to DeSoto County relying upon this Court's holding in *Bailey*.

**ANALYSIS**

¶12. An abuse of discretion standard of review is applied by this Court when reviewing the trial court's denial of a motion to change venue. *Bailey*, 919 So. 2d at 2; *see also Wayne Gen. Hosp. v. Hayes*, 868 So. 2d 997, 1002 (Miss. 2004) (citing *Guice v. Miss. Life Ins. Co.*, 836 So. 2d 756, 758 (Miss. 2003)). Accordingly, we will not disturb a trial judge's ruling on appeal "unless it clearly appears that there has been an abuse of discretion or that the discretion has not been justly and properly exercised under the circumstances of the case." *Hayes*, 868 So. 2d at 1002 (quoting *Guice*, 836 So. 2d at 758). Additionally, in *Austin v. Wells*, 919 So. 2d 961, 964 (Miss. 2006), this Court has clearly held that "proper venue is determined at the time the lawsuit is originally filed, and subsequent dismissal of the defendant upon whom venue is based does not destroy proper venue." *Austin*, 919 So. 2d at 964 (quoting *Estate of Jones v. Quinn*, 716 So.2d 624, 628 (Miss. 1998)); *see also Blackledge v. Scott*, 530 So.2d 1363, 1365 (Miss. 1988).

¶13. On appeal, Dr. Crenshaw argues that the trial court erred in denying the defendants' motion to transfer venue to DeSoto County from Marshall County. Dr. Crenshaw relies

heavily upon this Court's holding in *Bailey*. The Romans argue that Miss. Code Ann. § 11-11-11 (2001), as opposed to Miss. Code Ann. § 11-11-3 (2001), controlled.[4]

¶14.    In *Bailey*, the plaintiff argued that the "good for one good for all" rule in *Senatobia Community Hospital v. Orr*, 607 So. 2d 1224, 1226 (Miss. 1992), applied to allow the plaintiff's county of residence to be the proper venue where a non-resident defendant and a resident defendant were sued. *Bailey*, 919 So. 2d at 2. As in this case, the venue statutes in issue in *Orr* involved the application of the general venue statute, Miss. Code Ann. § 11-11-3, and Miss. Code Ann. § 11-11-11. *Orr*, 607 So. 2d at 1226. In *Orr*, this Court relied upon M.R.C.P. 82(c) to find the venue proper in the plaintiff's county of residence. *Orr*, 607 So. 2d at 1226. However, this Court expressly overruled *Orr* and its logic in *Capital City Ins. Co. v. G.B. "Boots" Smith Corp.*, 889 So. 2d 505, 516-17 (Miss. 2004), and subsequent followed that holding overruling *Orr* in deciding *Bailey*. *See Bailey*, 919 So. 2d at 3.

---

[4]    The Romans argue on appeal that Dr. Crenshaw did not have the authority to request transfer of venue based on BMH-DeSoto being a resident defendant; Wal-Mart joined into Dr. Crenshaw's motion for change of venue. However, BMH-DeSoto similarly filed a request to amend its answer raising the issue of improper venue. The Romans do not provide any legal authority for their position. This Court has repeatedly held that the Court is under no obligation to consider an issue concerning which the party has failed to cite authority. *Brown v. State*, 534 So. 2d 1019, 1023 (Miss. 1988); *see Clark v. State*, 503 So. 2d 277 (Miss. 1987); *Kelly v. State*, 463 So. 2d 1070 (Miss. 1985); *Redmond v. State*, 457 So. 2d 1344 (Miss. 1984). "An assignment lacking authority lacks persuasion on review." *Brown*, 534 So. 2d at 1023; *Smith v. State*, 430 So. 2d 406 (Miss. 1983).

¶15.    In **Bailey**, this Court determined that the mandatory language "shall" in the general

venue statute, Miss. Code Ann. § 11-11-3, controlled, holding:

> [T]he [Mississippi] Legislature never intended an interpretation of the venue
> statutes that would allow a resident defendant to be sued in the plaintiff's county
> of residence simply because a non-resident defendant, be it an individual or a
> corporation is joined in the same suit.   The reasoning and logic in **Capital City
> Ins. Co**. control the case sub judice.

**Bailey**, 919 So. 2d at 3.  Miss. Code Ann. § 11-11-3 (2001) was amended in 2002.  *See* 2002

Miss. Laws, 3rd Ex. Sess., ch. 2, § 1, eff. January 1, 2003; 2002 Miss. Laws, 3rd Ex. Sess., ch.

4, § 1, eff. January 1, 2003.[5]   At the time this lawsuit was commenced in 2001, Miss. Code

Ann. § 11-11-3 (2001) stated:

> Civil actions of which the circuit court has original jurisdiction **shall** be
> commenced in the county in which the defendant or any of them may be found
> or in the county where the cause of action may occur or accrue and, if the
> defendant is a domestic corporation, in the county in which said corporation is
> domiciled or in the county where the cause of action may occur or accrue, . . .

---

[5]   Miss. Code Ann. § 11-11-3 (2003) was revised and omitted the language, "accrue,"
providing:

> (1) Civil actions of which the circuit court has original jurisdiction **shall** be
> commenced in the county where the defendant resides or in the county where
> the ***alleged act or omission occurred or where the event that caused the
> injury occurred***.   Civil actions against a nonresident may also be commenced
> in the county where the plaintiff resides or is domiciled.   Civil actions alleging
> a defective product may also be commenced in the county where the plaintiff
> obtained the product.
>
> (2) If a civil action is brought in an improper county, such action may be
> transferred to the proper county pursuant to Section 11-11-17.

(Emphasis added).   In this case, the revision to remove the language, "accrue," does not affect
the analysis as there is no distinction between accrue and occur raised by the parties.

> If a civil action is brought in an improper county, such action may be transferred to the proper county pursuant to Section 11-11-17.

(Emphasis added). Miss. Code Ann. § 11-11-11 (2001), in effect at the time the case was filed, provided:

> All civil actions for the recovery of damages brought against a nonresident or the representative of the nonresident in the state of Mississippi *may* be commenced in the county in which the action accrued or where the plaintiff then resides or is domiciled, except as otherwise provided by law.

(Emphasis added).

¶16.  In *Capital City Ins*., 889 So. 2d at 516-17, this Court held:

> *The additional option of suing in the plaintiff's home county is not available to a plaintiff when a resident defendant is sued*. This *logical conclusion has the effect of ranking the general venue statute above the other venue statutes in circumstances where more than one may apply*. . . . In *Orr* this Court incorrectly presumed that there was no ranking of the statutes and thus did not discuss the possibility. We find today that the reasoning in *Orr* is flawed; and therefore, it is overruled.

(Emphasis added).

¶17.  This Court made it clear in *Capital City Ins*. that the logic applied in *Orr*, holding that statutes are not ranked, was flawed and expressly overruled. *Capital City Ins*., 889 So. 2d at 516-17. In *Capital City Ins*., the mandatory language, "shall," in the general venue statute, Miss. Code Ann. § 11-11-3, controlled over the permissive language, "may," found in Miss. Code Ann. § 11-11-7.[6] *Id*. The Court ranked the general venue statute above the other venue statutes that may have applied. *Id*.

---

[6] Miss. Code Ann. § 11-11-7 was repealed during the 2002 legislative session.

8

¶18. "[S]tatutory construction gives preference to one statute over the other," therefore, [h]ad the Legislature intended for each statute to have equal footing or equal force then both statutes should have had the mandatory 'shall' language." *Id*. at 515. Accordingly, we find that mandatory language, "shall," in the general venue statute, Miss. Code Ann. § 11-11-3, controls in this case over the permissive language, "may," found in Miss. Code Ann. § 11-11-11. *Bailey*, 919 So. 2d at 3; *Capital City Ins*., 889 So. 2d at 516-17.

¶19. The Romans argue that this Court's holding in *Bailey* does not apply retroactively to this case. However, the Romans' position is without merit. In *Thompson v. City of Vicksburg*, 813 So. 2d 717, 721 (Miss. 2002), this Court held:

> The law is quite clear regarding retroactive application of judicially articulated rulings. Retroactive application is not limited to pending appeals, as stated by City, but also *applies to cases awaiting trial*. We have held consistently that "judicially enunciated rules are applied retroactively." *Anderson v. Anderson*, 692 So. 2d 65, 70 (Miss. 1997) (citing *Ales v. Ales*, 650 So. 2d 482, 484 (Miss. 1995); *Hall v. Hilbun*, 466 So. 2d 856, 875 (Miss. 1985)). These cases were all pending review on appeal when a change in the law occurred, which change was applied retroactively. In *Cain v. McKinnon*, 552 So. 2d 91, 93 (Miss. 1989), we stated that a new rule enunciated in a case while *Cain* was pending was to be "*enforceable in all actions pending on [that date], and not then final*." *See also Mullen* [*v. Green Tree Fin. Corporation*, 730 So. 2d 9, 12 (Miss. 1998)] (citing *Griffin v. Tall Timbers Dev., Inc*., 681 So. 2d 546, 552 (Miss. 1996)).

(Emphasis added).

¶20. The Romans further argue that M.R.C.P. 82(c) allows venue to remain in Marshall County. However, M.R.C.P. 82(c) does not support a plaintiff establishing venue in his own

county of residence when a resident defendant is a party to the suit.[7] *Capital City Ins.*, 889 So. 2d at 517. In *Capital City Ins.*, we expressly overruled any contrary language in *Boston v. Hartford Acc. & Indem. Co.*, 822 So. 2d 239 (Miss. 2004); *Ill. Cent. R.R. v. Travis*, 808 So. 2d 928 (Miss. 2002); *American Bankers Ins. Co. of Florida v. Alexander*, 818 So. 2d 1073 (Miss. 2001); and *McDonald v. Holmes*, 595 So. 2d 434 (Miss. 1992), which supported Rule 82(c) establishing venue in the plaintiff's county of residence when a resident defendant is a party to the suit. *Capital City Ins.*, 889 So. 2d at 517; *see also Bailey*, 919 So. 2d at 4.

¶21. Here, BMH-DeSoto, a Mississippi corporation with its principal place of business in DeSoto County, was a named defendant. The Romans did not voluntarily dismiss BMH-DeSoto until the Defendants' raised the issue of improper joinder. The Romans improperly argue that the dismissal of BMH-DeSoto cured or corrected the improper venue by dismissing BMH-DeSoto, the resident defendant, from the case. *See Austin*, 919 So. 2d at 964 (venue is determined from the original filing).

¶22. Further, Eva was treated at BMH-DeSoto in DeSoto County when she received the alleged negligent care and treatment from BMH-DeSoto and Dr. Crenshaw. Dr. Crenshaw provided all medical treatment Eva received from him in DeSoto County. Eva's three surgeries were performed at BMH-DeSoto, therefore, the Romans' allegations of medical malpractice

---

[7] As previously discussed, this Court in *Capital City Ins.*, rejected the holding in *Orr*, which applied M.R.C.P. 82(c) to find the venue proper in the plaintiff's county of residence, expressly overruling *Orr* and its logic. *Capital City Ins.*, 889 So. 2d at 516-17; *see also Bailey*, 919 So. 2d at 3 (The Court followed its holding in *Capital City Ins.* regarding the application of M.R.C.P. 82(c).).

occurred in DeSoto County. Likewise, Eva's alleged slip and fall occurred in DeSoto County. In this case, venue is proper in DeSoto County. Thus, the trial court abused its discretion in denying a change of venue from Marshall County to DeSoto County.

## CONCLUSION

¶23. For the foregoing reasons, we reverse the judgment of the trial court denying Dr. Crenshaw's motion to transfer venue to DeSoto County from Marshall County and remand the case to the Marshall County Circuit Court with directions that it transfer venue in this case to the Circuit Court of DeSoto County consistent with this opinion.

¶24. **REVERSED AND REMANDED**.

**SMITH, C.J., WALLER, P.J., CARLSON, DICKINSON AND RANDOLPH, JJ., CONCUR. COBB, P.J., CONCURS IN RESULT ONLY. DIAZ AND GRAVES, JJ., DISSENT WITHOUT SEPARATE WRITTEN OPINION.**