BARNES, J.,
for the Court.
¶ 1. The Justice Court of Monroe County convicted Mary Reed Evans of driving under the influence (DUI), first offense. Evans appealed to the Circuit Court of Monroe County. After a trial de novo without a jury, the circuit court came to the same result. Evans now appeals to this Court. We reverse and remand to the circuit court for a new trial.
SUMMARY OF FACTS AND PROCEDURAL HISTORY
¶2. Late in the afternoon of July 19, 2006, Evans, who lives in Prairie, Mississippi, drove to pick up her friend, Julann Callender, who lives in Aberdeen, Mississippi. The two women traveled to Tupelo to shop at Sam’s Club. Once they finished shopping, they went to Woody’s, a restaurant and lounge in Tupelo. Between the hours of approximately 6:00 p.m. and 11:00 p.m., they had dinner. Evans said she drank four Bud Lights. Both women claim the only alcohol they consumed that evening was at Woody’s. They left the restaurant and drove back to Aberdeen. At approximately midnight, Evans dropped Callender off at her home. Cal-lender testified that she offered Evans a beer as she was leaving, which Evans accepted. Callender claimed that Evans did not appear to be intoxicated.
¶ 3. Evans then proceeded home to Prairie along Highway 382. There had been a severe storm that evening; so trees and power lines were down in the area. Approximately two miles from Evans’s home, Mississippi Highway Patrolman Andrew Sisk had the eastbound lane of Highway 382 partially blocked as emergency vehicles were cleaning the debris from the highway. Officer Sisk was inside his patrol car with his headlights and blue lights on. He testified he was attempting to redirect traffic to a county road. When Evans came upon this area in the westbound lane, she proceeded slowly, but she did not stop her vehicle. Officer Sisk, wanting her to stop, tried to get Evans’s attention by cutting his spotlight on and shining it in her car, but to no avail. Feeling she should have known to stop, Officer Sisk pulled Evans over approximately one-half mile from the area. When he approached her vehicle, he noticed the smell of alcohol emanating from Evans’s vehicle. He saw an open beer can on the console (the one Callender had given Evans); however, Evans testified she had not consumed any of it. Officer Sisk also saw three or four unopened beers in Evans’s backseat. When queried about whether she had had any alcohol to drink that evening, Evans admitted to Officer Sisk she had been drinking beer at Woody’s that evening. He proceeded to administer an alcohol test with a portable Intoxilyzer device, which detected the presence of alcohol on her breath, but he did not conduct any field sobriety tests. Evans was then arrested and taken to the Monroe County Sheriffs Office, where she agreed to have a blood alcohol concentration (BAC) test on the Intoxilyzer 8000 machine.
¶ 4. However, before Evans and Officer Sisk departed for the sheriffs office, they had to wait for a vwecker from Aberdeen to tow Evans’s car, as this was standard operating procedure. Evans’s DUI ticket shows the time of the stop as 12:50 a.m. By the time Evans completed the paperwork at the sheriffs office and the BAC test was administered, it was 1:58 a.m. After a delay of one hour and eight minutes from the time she was driving and pulled over to the time of the test, Evans’s BAC was determined to be .09%, or .01% over the legal limit of .08%, pursuant to Mississippi Code Annotated section 63-ll-30(l)(c) *1064 (Supp.2008). Therefore, she was charged with DUI, first offense.
¶ 5. The Justice Court of Monroe County convicted Evans of DUI. She appealed the conviction to the Circuit Court of Monroe County, which held a trial de novo without a jury, finding Evans guilty. Prior to the trial, the State moved in li-mine to exclude the testimony of the defense’s expert witness, Dr. A.K. Rosenhan, who was to testify regarding the absorption rate of alcohol. The State argued that since this case is a DUI per se violation,[1] the defense is prohibited from introducing evidence of alcohol consumption. The State continued that in order for the expert to formulate an opinion about Evans’s absorption rate, evidence would have to be introduced about her consumption of alcohol, which the State claimed is prohibited by Porter v. State, 749 So.2d 250 (Miss.Ct.App.1999). Therefore, the State moved to prohibit the introduction of any evidence from either expert or lay witnesses who would testify as to the manner or timing of her consumption of alcohol. After the defense argued Porter was inapplicable to the present case, the circuit court judge granted the State’s motion. However, Dr. Rosenhan was allowed to proffer his testimony for the sole purpose of creating a record. Evans now appeals to this Court.
ANALYSIS
¶ 6. Evans raises two issues: (1) whether the trial court erred in excluding the expert testimony of Dr. Rosenhan, and (2) whether Porter precludes testimony relating to the amount and timing of the consumption of alcohol that would provide the necessary basis for the expert’s opinion on the possible BAC of Evans at the time she was operating her vehicle. We shall discuss these issues together as they are interlinked — Porter was cited as the basis for the trial court’s exclusion of the consumption of alcohol evidence and Dr. Ro-senhan’s expert testimony.
¶ 7. Evans argues that the circuit court’s grant of the State’s motion in limine based on Porter was in error; thus, the circuit court and the State misinterpreted Porter. The State contends that the evidence was properly excluded under Porter. The State also argues that even if the circuit court misapplied PoHer, the evidence and testimony were properly excluded because Dr. Rosenhan was not qualified as an expert under Mississippi Rule of Evidence 702.
¶ 8. The standard of review for the admission or exclusion of evidence is an abuse of discretion. Miss. Transp. Comm’n v. McLemore, 863 So.2d 31, 34(¶ 4) (Miss.2003). Further, “the admission of expert testimony is within the sound discretion of the trial judge. Therefore, the decision of a trial judge will stand ‘unless we conclude that the discretion was arbitrary and clearly erroneous, amounting to an abuse of discretion.’ ” Id. (internal citations omitted).
¶ 9. The central issue in this case is whether Evans was illegally intoxicated at the time she was operating her vehicle when driving home from Tupelo. Officer Sisk pulled her over at 12:50 a.m., but Evans’s BAC was not tested on the Intoxi-lyzer 8000 until 1:58 a.m., resulting in an approximate one-hour delay since the time she was pulled over. The machine deter *1065 mined Evans’s BAC to be .09%, or .01% over the legal limit. Dr. Rosenhan proffered testimony on retrograde extrapolation, which has been explained as a scientific method of making a determination of the BAC at a particular point in time by “predicting an earlier unknown value by calculating a known later value with a series of generally used average values, and projecting that result back in time.” Smith v. State, 942 So.2d 808, 312(¶ 8) (Miss.Ct.App.2006). Dr. Rosenhan described it as a “mathematical relationship” related to whether Evans was in the absorption or metabolism phase of ethanol ingestion. The defense sought to establish, through Dr. Rosenhan’s testimony, that from the time she was stopped by Officer Sisk until the time of the test, Evans’s BAC was rising, as she was in the absorption phase of ethanol ingestion. He based this opinion that Evans was in the absorption phase on her body weight, the time frame of ethanol ingestion, and the amount of ethanol consumed — four twelve-ounce Bud Lights. Evans was within a few minutes from her house when she was pulled over; so Dr. Rosenhan opined her BAC would not have risen over the legal limit of .08% BAC before she arrived home. During cross-examination, the State pointed out the fact that Evans first blew a BAC of .104 and two minutes later blew a .099, indicating her BAC was decreasing at the time of the test. On redirect, however, Dr. Rosenhan countered that it is not unusual for small variations in the test results such as these, and one could not draw any conclusions concerning retrograde extrapolation from them.
¶ 10. We find the circuit court judge erred in excluding evidence of Evans’s alcohol consumption and the expert testimony of Dr. Rosenhan. His testimony was relevant as he would have offered his expert opinion regarding Evans’s BAC at the time she was pulled over by Officer Sisk. This evidence is especially relevant here, where there was approximately a one-hour delay between the time she was pulled over and the time she was tested, and her BAC level was only .01% over the legal limit.
¶ 11. Furthermore, we find the circuit court misapplied Porter as the basis for excluding the evidence. The circuit court judge accepted the argument by the State that the defense is prohibited from introducing evidence from either expert or lay witnesses regarding alcohol consumption because this is a “DUI per se case” under Porter, and there was an admissible Intox-ilyzer test result that showed Evans’s BAC to be over the legal limit. The State explained, and the circuit court agreed, that if this evidence on alcohol consumption is inadmissible, Dr. Rosenhan’s expert testimony then becomes irrelevant, because in order for the expert to formulate his opinion about Evans’s BAC at the time she was pulled over, evidence on consumption would have to be admitted to apply his retrograde-extrapolation formula to the facts of the case.
¶ 12. We agree with Evans that Porter is not controlling in the instant case. In Potter, after being arrested, the defendant submitted to an Intoxilyzer analysis of his BAC at the police station. His BAC was determined to be .164%. Potter, 749 So.2d at 253(¶ 5). There was no issue regarding a lapse of time between his arrest and the test. Procedurally, at trial the circuit court granted the State’s motion in limine, and this Court found no error. Id. at 255(¶ 15). Porter sought to present evidence that would rebut what he termed “the ‘presumption’ that his blood alcohol content of .164% impaired his ability to operate his vehicle.” Id. at 254-55(¶ 13).
¶ 13. In order to understand Potter’s holding in light of our current DUI laws, *1066 we must analyze the DUI statute’s legislative history. As the Porter court explained, since an amendment to the DUI statutes in 1983, it is a “per se” violation to operate a vehicle when the defendant’s BAC, as shown through a chemical analysis, is over the legal limit, which at that time was .10%.[2] Id. at 255(¶ 14) (citing Fisher v. City of Eupora, 587 So.2d 878, 888 (Miss.1991)). Therefore, this Court stated that the supreme court explained in Fisher that since 1983, there is no longer a statutory “presumption” that a person is intoxicated if he is over the legal limit for BAC, but instead it is a “per se” violation under section 63-11-30. Id. This is the “presumption” that Porter was attempting to rebut. Further, in 1991, section 63 — 11— 39(2) (1972), a statute allowing the introduction of evidence on whether or not a person was under the influence of intoxicating liquor which impaired a person’s ability to operate a motor vehicle, was repealed. Id. at 255(¶ 15). Because of this repeal, this Court found Porter’s argument nullified, as he could not enter evidence that he was not impaired because he was prosecuted for a DUI per se violation, and not impairment. Id.
¶ 14. Currently, the pertinent Mississippi DUI statute provides in part that it is unlawful for any person to drive or operate a vehicle in Mississippi if he is: (a) under the influence of intoxicating liquor; (b) under the influence of any other substance which has impaired such person’s ability to operate a motor vehicle; or (c) has an alcohol concentration of eight one-hundredths percent (.08%) or more for persons at or above the legal age to purchase alcoholic beverages in Mississippi. Miss.Code Ann. § 63-ll-30(l)(a)-(c). Section 63-ll-30(l)(a) is referred to as “common law DUI,” and it is distinguishable from section 63 — 11—30(l)(c), which is referred to as “per se DUI.” “Common law DUI” is often used to prosecute defendants when BAC test results are unavailable, or the defendant’s BAC tests are under the legal limit, but there is sufficient evidence to prove the defendant’s ability to operate a vehicle was impaired by the consumption of alcohol. Leuer, 744 So.2d at 268 (¶¶ 6-7). This evidence of impairment may include slurred speech, bloodshot eyes, or erratic driving. However, in Evans’s case, we do not have any such “impairment” evidence, only her BAC level. Thus, Evans was not prosecuted under the common law DUI statute, but for a per se violation under section 63 — 11—30(l)(c). We read Porter to stand for the proposition that in a DUI per se case, the defendant cannot offer evidence regarding whether or not he was under the influence which would impair his ability to diive a vehicle.[3] We do not read Porter as holding that in a DUI per se case, evidence regarding the consumption of alcohol cannot be introduced to prove whether or not the defendant was at a certain BAC when he was driving a motor vehicle. In the instant case, Evans was not offering evidence of her consumption of alcohol and Dr. Rosenhan’s testimony on retrograde extrapolation for the purpose of proving she was not impaired when she was pulled over. Instead, she offered it for the purpose of proving that she did not have a BAC of .08% or over when she was pulled over; thus, she did not violate section 63-ll-30(l)(c). We find this distinction dis-positive.
*1067 ¶ 15. The State interprets Evans’s argument to be that although her BAC was over the legal limit when she was tested, she was not impaired an hour earlier when she was driving; thus, Evans is really trying to prove, through Dr. Rosenhan’s testimony and other evidence, that her alcohol consumption did not impair her ability to drive. We find the State misinterprets Evans’s argument and her purpose for introducing the evidence. Evans could not introduce evidence to prove that, even though her BAC test result was .09%, she was not impaired at the time she was driving, because this would conflict with the holding of Porter. However, we do not find this was the reason Evans offered the evidence; instead, it was offered to prove her BAC was not above the legal limit when she was pulled over.
¶ 16. Moreover, regarding testimony on retrograde extrapolation, as Evans points out, Mississippi courts have allowed this type of expert testimony in DUI per se cases where there has been a time lapse between the time the defendant was last driving and the time of the BAC test. However, in most cases, the State is offering the testimony in order to prove the defendant’s BAC at the time of the accident or arrest was actually higher at this time than at the time of the test. In Cowart v. State, 910 So.2d 726 (Miss.Ct.App.2005), an expert witness was allowed to testify for the State on “rates of absorption and metabolism of alcohol” in order to prove that the defendant’s BAC, which measured .16% three hours after the accident, was roughly .20% at the time of the accident, and thus the defendant’s claim that he was not intoxicated at the time of the accident was untrue. Id. at 729(¶ 13).
¶ 17. Additionally, in Smith, both the State and the defense were allowed to offer expert testimony on retrograde extrapolation. Smith, 942 So.2d at 316-17(¶ 21). In Smith, the defendant’s BAC was taken four hours after the accident and found to be .13%. Id. at 311(¶ 5). Both experts came to different results: the State’s expert was allowed to testify that Smith’s BAC would have been higher at the time of the accident. Id. The defense’s expert testified that in this case, retrograde extrapolation was an unreliable method of estimating Smith’s BAC at the time of the accident because there was only one known value for the calculations, and two known values were needed. Id. at 317(1122). Further, the defense’s expert argued retrograde extrapolation was only accurate up to a maximum of two hours, and Smith argued the four-hour delay precluded the BAC test’s admissibility. Id. The trial court allowed the State’s expert to give her opinion to the jury that Smith’s BAC would have been higher at the time of the accident than when his blood was tested, but she was precluded from quantifying what Smith’s BAC would have been at the time of the accident. Id. at 317(¶24). This Court affirmed, finding the trial court properly exercised its gatek-eeping role in determining that the testimony of both experts would aid the jury.[4] Id. at 318(¶ 26). Also, the defense’s expert was allowed to testify to counter the State’s expert. Id. We find no distinction between these cases and the instant case, where the defendant is trying to use retrograde extrapolation to prove her BAC was rising, not decreasing, in the time period before her BAC test.[5]
*1068 ¶ 18. Finally, the State argues that if this Court finds Dr. Rosenhan’s testimony was improperly excluded under Porter, Dr. Rosenhan’s testimony is still inadmissible because he did not qualify as an expert. Evans, however, maintains that Dr. Rosen-han’s expertise was not challenged at trial. The State disagrees, contending that the prosecutor actually did challenge Dr. Ro-senhan’s qualifications by stating that he was “not aware of any expertise” in the field of “ethanol ingestion in the body.”
 ¶ 19. We are not persuaded by the State’s argument. The following colloquy occurred at trial among defense counsel Joshua Stevens, and prosecutor Robert Baker, after Dr. Rosenhan was examined about his qualifications:
Mr. Stevens: Specifically have you been tendered as an expert witness and served as an expert witness in DUI case type studies, blood alcohol content?
Dr. Rosenhan: Yes, sir. In that list of courts for blood alcohol calculations and discussion of the methods that they are determined.
Mr. Stevens: Are you familiar with what we mean by the absorption phase and the metabolism phase of one who has ingested alcohol?
Dr. Rosenhan: Yes, sir. This has been reduced to mathematical equations, and that’s what I utilized.
Mr. Stevens: [H]ave you had occasion to testify about a process called retrograde extrapolation?
Dr. Rosenhan: Yes, sir .... it is a mathematical relationship.
Mr. Stevens: Your Honor, I tender Mr. Rosenhan as an expert in the field of ethanol ingestion in the body.
The Court: Mr. Baker, do you have questions of voir dire of his qualifications?
Mr. Baker: My first question was for counsel opposite, exactly what this witness is being offered as an expert in.
Mr. Stevens: To testify based on the history of this particular case, what her blood alcohol content would have been at the time she was operating the motor vehicle based on proof.
Mr. Baker: Well, Your Honor, I’m not aware of any expertise in that particular area. If he’s got a particular area that he is offering [him] for, such as retrograde extrapolation ... that is something we would be able to respond to.
The Court: I assume that’s what he is going to testify to, Counsel.
Mr. Baker. Okay. Well, Your Honor, upon the issue of whether Mr. Rosen-han is going to be offered ... for the purpose of retrograde extrapolation, it’s an irrelevant issue to this case....
We find that on appeal the State takes the prosecutor’s comment out of context. Ac *1069 cording to the above colloquy, Mr. Baker was not objecting to Dr. Rosenhan’s qualifications, but the precise name of his expertise. We do not find a significant difference between the two phrases used to describe Dr. Rosenhan’s expertise. “Retrograde extrapolation” is the mathematical formula used to determine the rate of “ethanol ingestion in the body.” Obviously, the trial judge and defense counsel were under the impression Dr. Rosenhan was going to testify about “retrograde extrapolation,” and this is the line of questioning which preceded the State’s objection. Once this point was clarified, the prosecutor moved on to discuss the merits of Dr. Rosenhan’s testimony. He made no attempt to challenge Dr. Rosenhan’s qualifications as an expert in either “ethanol ingestion in the body” or “retrograde extrapolation.” The State is not allowed to litigate a new issue on appeal; it is well established that failure to raise an issue in the trial court procedurally bars the issue on appeal. Daniels v. Bains, 967 So.2d 77, 81(¶ 13) (Miss.Ct.App.2007).
¶ 20. Procedural bar notwithstanding, we find Dr. Rosenhan sufficiently qualified as an expert in “retrograde extrapolation” or “ethanol ingestion in the body.” Discussing Mississippi’s Daubert standard and Mississippi Rule of Evidence 702 regarding the qualifications of an expert witness, our supreme court has stated:
First, the witness must be qualified by virtue of his or her knowledge, skill, experience or education. Second, the witness’s scientific, technical or other specialized knowledge must assist the trier of fact in understanding or deciding a fact in issue. In addition, Rule 702 “does not relax the traditional standards for determining that the witness is indeed qualified to speak an opinion on a matter within a purported field of knowledge.”
McLemore, 863 So.2d at 35(¶ 7) (internal citations omitted). Dr. Rosenhan is a registered mechanical engineer with a bachelors and masters of science in mechanical engineering, and he has done all but his dissertation for a Ph.D. He has taught courses in internal combustion engines and statistics at Mississippi State University for approximately forty-four years. He testified that the Intoxilyzer 8000 is essentially an engineering instrument — an infrared spectrometer. He has engaged in scientific studies of the effect of ethanol on the body, and while he is not a toxicologist, he has studied “the various relationships between ethanol ingestion, absorption, elimination, and blood alcohol content in humans.” Additionally, Dr. Rosenhan stated he has served as an expert witness in DUI cases on blood alcohol content methods and calculations. Accordingly, we find that the State’s argument that Dr. Rosenhan is not qualified as an expert in retrograde extrapolation is without merit.
CONCLUSION
¶ 21. For the foregoing reasons, we find the circuit court abused its discretion in excluding the evidence of Evans’s consumption of alcohol and the expert testimony of Dr. Rosenhan. Additionally, we reject the State’s argument that Dr. Ro-senhan is not qualified as an expert in retrograde extrapolation. Accordingly, we reverse and remand for a new trial in accordance with this opinion.
¶ 22. THE JUDGMENT OF THE CIRCUIT COURT OF MONROE COUNTY IS REVERSED AND REMANDED FOR A NEW TRIAL CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO MONROE COUNTY.
KING, C.J., LEE, P.J., IRVING, ISHEE AND ROBERTS, JJ., CONCUR. *1070 CARLTON, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY MYERS, P. J., AND GRIFFIS, J. CHANDLER, J., NOT PARTICIPATING.

. A "DUI per se" violation means a violation that should be charged as an offense under section 63 — 11—30(l)(c), "when test results are available and are sufficient to give the officer probable cause” to believe that the person is operating a vehicle with a BAC of .08% or more. Leuer v. City of Flowood, 744 So.2d 266, 268(¶ 7) (Miss.1999) (quoting Young v. City of Brookhaven, 693 So.2d 1355, 1363-64 (Miss.1997) (citation omitted)).

. In 2002, this standard was lowered to .08%. See Miss.Code Ann. § 63-11 — 30(l)(c) (Supp. 2003).

. However, this type of evidence would be properly offered for a violation of section 63-1 l-30(l)(a).

. There was no issue on appeal as to whether the trial court should have allowed the State's expert to quantify the BAC at the time of the accident.

. We are not persuaded by the attempt of the dissent to distinguish Cowart and Smith. While these cases do concern section 63 — 11— 30(5), DUI manslaughter, rather than section 63-11-30(1) alone, by definition, in order to *1068 violate subsection (5), there has to be a violation of subsection (1). The opinions did not specify what portion of subsection (1) was involved; however, we have reviewed the records of those cases and have confirmed that each defendant was indicted for causing the accident while having ten one-hundredths percent (.10%) or more by weight volume of alcohol in his blood. Further, the jury instructions and closing arguments of both cases do not reflect that there was any issue of intoxication other than by exceeding the BAC. We have reviewed the entire trial transcript of Cowart, and there was no evidence presented of any impairment at the time of the accident, other than Cowart’s BAC. The testimony cited by the dissent regarding Co-wart's evidence of intoxication and statements to law enforcement officers were after his return to the scene two hours later. Accordingly, we find these DUI per se cases analogous to the one before us.