ROBERTS, J.,
for the Court:
¶ 1. Roger McMurtry appeals his convictions for careless driving and first offense driving under the influence of alcohol. Following an unsuccessful appeal to the Rankin County Circuit Court, McMurtry claims the prosecution was obligated to call a witness to sponsor the results of the Intoxilyzer 8000 test that indicated his breath-alcohol content was .16%. MeMur-try also claims the prosecution should have been obligated to present the calibration certificates for the Intoxilyzer 8000. Additionally, McMurtry claims there was no probable cause to stop him. Finally, McMurtry argues that there was insufficient evidence to convict him for careless driving or driving under the influence. Finding no error, we affirm.
FACTS AND PROCEDURAL HISTORY
¶2. McMurtry’s convictions stem from events that began at approximately 7:05 p.m. on November 9, 2009. Two separate callers notified the Brandon Police Department of a reckless driver on Highway 80. The reckless driver was later identified as McMurtry. One of the callers followed McMurtry and updated the police department regarding his location. Sergeant Joshua Arnold caught up and followed McMurtry, who had turned onto Interstate 20 since the callers had contacted the police department.
¶ 3. As Sergeant Arnold followed him, McMurtry drifted from one edge of his lane to the other. After McMurtry failed to stop at a stop sign, Sergeant Arnold turned on his blue lights. McMurtry did not stop. Instead, he turned left onto Highway 80. According to Sergeant Arnold, McMurtry continued driving “for a pretty good time.” McMurtry stopped after Sergeant Arnold turned on his siren.
¶ 4. Sergeant Arnold approached McMurtry’s van. Sergeant Arnold later testified that he “immediately smelled the odor of an intoxicant coming from [McMurtry’s] area.” Sergeant Arnold also observed that McMurtry’s pupils were dilated. When Sergeant Arnold asked McMurtry whether he had been drinking, McMurtry responded that “he had had one beer.” Sergeant Arnold asked, “Is that it?” McMurtry held up two fingers and said he had consumed two beers.
¶ 5. McMurtry got out and walked to the back of the van. According to Sergeant Arnold, he “could still smell the odor of an intoxicant coming from [McMurtry’s] breath.” Sergeant Arnold also noted that McMurtry “was swaying back and forth while [they] were talking.” McMurtry’s speech was also “slightly slurred.”
¶ 6. McMurtry consented to a portable breath test. Sergeant Arnold later testified that McMurtry’s portable breath test was “positive for alcohol.” McMurtry also consented to two field sobriety tests. Sergeant Arnold asked McMurtry to recite the alphabet from F to W. McMurtry tried three times, but he could not complete the test. Furthermore, McMurtry was unable to count backward from 42 to 17. Sergeant Arnold arrested McMurtry for DUI. While waiting for a tow truck, McMurtry allowed Sergeant Arnold to search the van. Sergeant Arnold found “a red cup that was still kind of cold to the touch.” Sergeant Arnold clarified that it smelled like a “mixed drink.”
¶ 7. Sergeant Arnold drove McMurtry to the Brandon Police Department. An In-toxilyzer 8000 test indicated that McMur-try’s breath-alcohol content was .16%. Ser *398 geant Arnold charged McMurtry with driving under the influence and careless driving.
¶ 8, McMurtry went before the Brandon Municipal Court and pled nolo contendré to both charges. McMurtry then appealed to the Rankin County County Court for a de novo trial. At trial, the prosecution called Sergeant Arnold and Maury Phillips, an expert witness who testified regarding the operation and accuracy of the Intoxilyzer 8000. After the prosecution rested its case-in-chief, McMurtry called Dr. Stephen T. Hayne as an expert witness in the field of clinical pathology. Dr. Hayne testified that his retrograde-extrapolation calculation indicated that McMur-try’s blood-alcohol content was .03% at the time Sergeant Arnold stopped McMurtry. McMurtry rested after Dr. Hayne testified. The prosecution called Phillips during rebuttal. Phillips contradicted Dr. Hayne’s calculation. Sitting without a jury, the county court found McMurtry guilty of driving under the influence of alcohol and careless driving. For driving under the influence, the county court sentenced McMurtry to forty-eight hours in the Rankin County Jail, but the county court suspended the entire sentence. The county court also fined McMurtry $1,000 and suspended one-half of that fine. For careless driving, the county court fined McMurtry $50. McMurtry appealed to the circuit court. The circuit court affirmed the county court’s judgment. McMurtry appeals.
ANALYSIS
I. CONFRONTATION CLAUSE
¶ 9. McMurtry cites the United States Supreme Court’s decision in Bullcoming v. New Mexico, — U.S. -, 131 S.Ct. 2705, 180 L.Ed.2d 610 (2011) for the principle that the county court -violated his right to confront his accusers. Specifically, McMurtry claims the county court erred when it allowed the prosecution to present the results of McMurtry’s Intoxi-lyzer 8000 test without allowing McMurtry to cross-examine the person who had calibrated the machine.
¶ 10. The Mississippi Supreme Court has rejected McMurtry’s argument. “[Rjecords pertaining to intoxilyzer inspection, maintenance, or calibration are indeed nontestimonial in nature, and thus, their admission into evidence is not viola-tive of the Confrontation Clause of the Sixth Amendment.” Matthies v. State, 85 So.3d 838, 844 (¶ 19) (Miss.2012). Consequently, this issue is without merit.
II. INTOXILYZER 8000 CERTIFICATES
¶ 11. McMurtry claims the county court erred when it allowed the prosecution to submit the results of the Intoxilyzer 8000 test into evidence without submitting the machine’s calibration certificate. The State argues that McMurtry is procedurally barred from raising this issue because he did not raise it in the county court. McMurtry contends that his attorney preserved the issue by raising “a broad objection relating in all respects to the calibration of the Intoxilyzer 8000.”
¶ 12. McMurtry’s attorney objected based on the United States Supreme Court’s decision in Melendez-Diaz v. Massachusetts, 557 U.S. 305, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009). That is, when the prosecution moved to introduce the Intoxi-lyzer 8000 results, McMurtry’s counsel objected “based upon the Melendez-Diaz holding ... that [the prosecution] would have to bring in some sort of testimony about the calibration of the machine.” In other words, McMurtry’s attorney objected because the prosecution did not produce *399 a witness to testify regarding the calibration of the Intoxilyzer 8000.
¶ 13. Even if we were required to view McMurtry’s objection in the light most favorable to him, it does not encompass the fact that the prosecution did not produce the Intoxilyzer 8000 calibration certificates. Accordingly, McMurtry raises “an error on appeal different from that raised at the trial level.” Jones v. State, 606 So.2d 1051, 1058 (Miss.1992). “A defendant is procedurally barred from raising an objection on appeal that is different than that raised at trial.” Id. Further, “[a] trial judge will not be found in error on a matter not presented to him for decision.” Id. (citing Crenshaw v. State, 520 So.2d 131, 134 (Miss.1988)). It follows that this issue is procedurally barred.
III. PROBABLE CAUSE
¶ 14. Next, McMurtry claims Sergeant Arnold did not have probable cause to stop him. But McMurtry never raised this issue before the county court. Consequently, this issue is also procedurally barred.
IV. SUFFICIENCY OF THE EVIDENCE
¶ 15. Finally, McMurtry claims the prosecution failed to prove beyond a reasonable doubt that he was guilty of DUI or careless driving. As our Mississippi Supreme Court has stated:
[I]n considering whether the evidence is sufficient to sustain a conviction in the face of a motion for [a] directed verdict or for [a] judgment notwithstanding the verdict, the critical inquiry is whether the evidence shows beyond a reasonable doubt that accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction.... [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Should the facts and inferences considered in a challenge to the sufficiency of the evidence point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty, the proper remedy is for the appellate court to reverse and render.
Bush v. State, 895 So.2d 836, 843 (¶ 16) (Miss.2005) (internal citations and quotations omitted). However, this Court will determine that there was sufficient evidence to sustain the jury’s verdict if the evidence was “of such quality and weight that, having in mind the beyond a reasonable doubt burden of proof standard, reasonable fair-minded men in the exercise of impartial judgment might reach different conclusions on every element of the offense.” Id. (internal citations and quotations omitted).

A. Careless Driving

¶ 16. McMurtry argues that the prosecution failed to offer sufficient evidence that he was guilty of careless driving because the prosecution did not prove that he bumped or crossed any of the traffic lanes. “Any person who drives any vehicle in a careless or imprudent manner, without due regard for the width, grade, curves, corner, traffic and use of the streets and highways and all other attendant circumstances is guilty of careless driving.” Miss.Code Ann. § 63-3-1213 (Rev. 2006).
¶ 17. Two independent drivers called 911 and reported that McMurtry was driving carelessly. Sergeant Arnold testified *400 that McMurtry was “kind of drifting” from right to left. Sergeant Arnold explained that he charged McMurtry for careless driving because “it was pretty obvious that [McMurtry] could not maintain control of [his] vehicle to keep it in his direct lane.” Sergeant Arnold also testified that McMurtry did not stop when Sergeant Arnold turned on his blue lights. According to Sergeant Arnold, McMurtry did not come to a complete stop at a stop sign. During cross-examination, Sergeant Arnold testified that he could see McMurtry “swerving in the roadway.” There was sufficient evidence to conclude that McMurtry was driving “without due regard for the width” of the road. Furthermore, a conviction for careless driving “can be sustained based on the uncorroborated testimony of just one witness.” Varvaris v. City of Pearl, 723 So.2d 1215, 1216 (¶ 5) (Miss.Ct.App.1998). We find no merit to McMurtry’s claim that there was insufficient evidence to sustain his conviction for careless driving.

B. Driving Under the Influence

¶ 18. McMurtry was found guilty of violating Mississippi Code Annotated section 63 — 11—30(l)(c) (Rev.2006). Section 63 — 11—30(l)(c) provides that it is unlawful for any person to drive or operate a vehicle in Mississippi if he has an alcohol concentration of eight one-hundredths percent (.08%) or more for persons at or above the legal age to purchase alcoholic beverages. McMurtry argues that the prosecution failed to prove beyond a reasonable doubt that his breath-alcohol content was .08% or greater at the time that he was driving.
¶ 19. McMurtry’s argument is based on the concept that although he was intoxicated at the time he took the intoxilyzer test, he was not intoxicated when he was driving. McMurtry notes that Sergeant Arnold administered the Intoxilyzer 8000 test one hour and forty-three minutes after the traffic stop. McMurtry further notes that the prosecution’s expert witness, Phillips, testified that it was impossible to pinpoint McMurtry’s exact blood-alcohol content at the time Sergeant Arnold stopped McMur-try. Additionally, McMurtry draws our attention to Dr. Hayne’s retrograde-extrapolation testimony.[1] Dr. Hayne testified that McMurtry’s blood-alcohol content would have been .03% at the time of Sergeant Arnold’s traffic stop.
¶ 20. Dr. Hayne’s calculation was based on multiple variables, including the volume of alcohol McMurtry had consumed, when McMurtry had consumed it, when McMur-try had eaten, and how much McMurtry had eaten. The county court judge noted that Dr. Hayne’s calculations relied on the concept that McMurtry “could have drank [sic] nine or eighteen beers and then gotten in his [van] and tried to drive.” The county court judge found that Dr. Hayne’s testimony was not credible and “absolutely incomprehensible.”[2] It was within the county court judge’s discretion to determine credibility. Suffice it to say, the credibility of the witnesses is not for this Court to decide. Gary v. State, 11 So.3d *401 769, 772 (¶11) (Miss.Ct.App.2009). We find no merit to this issue.
¶ 21. THE JUDGMENT OF THE CIRCUIT COURT OF RANKIN COUNTY AFFIRMING THE COUNTY COURT’S CONVICTION OF COUNT I, FIRST OFFENSE DRIVING UNDER THE INFLUENCE, AND SENTENCE OF FORTY-EIGHT HOURS IN THE RANKIN COUNTY JAIL WITH THE ENTIRE SENTENCE SUSPENDED AND FINE OF $1,000 WITH ONE-HALF OF THAT AMOUNT SUSPENDED; AND COUNT II, CARELESS DRIVING, AND FINE OF $50 IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, MAXWELL, RUSSELL AND FAIR, JJ., CONCUR.

. "Retrograde extrapolation” has been described as "a scientific method of making a determination of [one’s blood-alcohol content] at a particular point in time by predicting an earlier unknown value by calculating a known later value with a series of generally used average values, and projecting that result back in time.” Evans v. State, 25 So.3d 1061, 1065 (¶ 9) (Miss.Ct.App.2008) (citation and internal quotation omitted).

. The county court judge did not find that Dr. Hayne was uninformed regarding retrograde extrapolation. Instead, the county court judge noted that Dr. Hayne "had to make a bunch of assumptions that are information only in the possession of [McMurtry] who has an obvious interest in making that formula work.”